IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 5, 2008 Session

## ESTATE OF BENJAMIN F. DARNELL, SR., ET AL. v. CHARLES FENN, ET AL.

Appeal from the Chancery Court for Sevier County
No. 05-12-469        Telford E. Forgety, Jr., Chancellor

No. E2007-02696-COA-R3-CV - FILED FEBRUARY 27, 2009

Charles Fenn and Dott Fenn owned property in Sevier County. In August 1996, they entered into a contract to sell the property to Benjamin F. Darnell, Sr. The Fenns agreed to finance the sale over a ten-year period. According to the contract, Mr. Darnell was to make monthly payments of $999.11 for ten years, with one final balloon payment of $113,058.43. Mr. Darnell died in February 2004 and his wife, Mary Darnell, continued making the monthly payments. Unbeknownst to Ms. Darnell, on October 14, 2005, the Fenns sold the property to Teddy Jones. Four days later, Ms. Fenn, through her attorney, sent Ms. Darnell a letter terminating the contract based on various alleged breaches. Ms. Darnell filed suit seeking specific performance of the contract. Following a bench trial, the court found that the contract was enforceable; it ordered specific performance. The trial court rejected the claim of the defendant Teddy Jones that he was a bona fide purchaser without knowledge. The Fenns and Mr. Jones appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Jerry K. Galyon, Sevierville, Tennessee, for the appellants, Charles Fenn, Dott Fenn, and Teddy Jones, Trustee.

David H. Parton, Gatlinburg, Tennessee, for the appellees, Mary J. Darnell, individually and as personal representative of the Estate of Benjamin F. Darnell, Sr., and parent and next friend of Jonathan J. Darnell and Melissa Darnell, both minors, Benjamin F. Darnell, Jr., Susan A. Reagan, Dolly M. Darnell, Lilly M. Stoltz, Thomas E. Darnell, Marie E. Darnell, and William C. Darnell.

**OPINION**

I.

This is an action for specific performance originally brought by Mary Darnell, individually and as personal representative of the estate of her late husband, Benjamin F. Darnell, Sr. ("the decedent"). The complaint was originally filed on December 22, 2005. Thereafter, it was amended to add various parties as additional plaintiffs (collectively referred to as "Plaintiffs"), all of whom are heirs to the decedent's estate. Plaintiffs claim that the decedent entered into a valid and enforceable contract with the Fenns for the sale of the land located in Sevier County. Plaintiffs sought to enforce the terms of that contract. According to the amended complaint:

> [T]he Plaintiff Estate holds a contract for Sale and Purchase of real property located in Sevier County, Tennessee, between [the decedent] . . . and Defendants, Charles Fenn and wife, Dott Fenn, dated August 2, 1996, a copy of said contract being of record . . . in the Office of the Register of Deeds for Sevier County, Tennessee. . . .

> That pursuant to the terms of the parties' contract, the decedent was purchasing from Defendants, Charles Fenn and wife, Dott Fenn, real property improved by commercial buildings . . . .

> That pursuant to the parties' contract, the decedent, and subsequent to the decedent's death, the Plaintiff Estate paid all monthly payments owing pursuant to the amortization schedule . . . and Defendants, Charles Fenn and wife, Dott Fenn, have accepted all of said payments excepting the November 2005 payment which was returned to the Plaintiff.

> That the decedent and the Plaintiff Estate made expensive improvements to the existing buildings on the property, maintained liability and casualty insurance on the property and have otherwise fully complied with the terms of the parties' agreement.

> That the Defendants . . . waived any alleged default of the contract by their actions [of] continuing to accept the benefits of the contract, including all monthly payments with full knowledge of any alleged default.

> That Defendant, Dott Fenn, contacted the Personal Representative of the Plaintiff Estate in 2005 and demanded that the Estate immediately make the balloon payment which is not due until August 15, 2006, pursuant to the parties' agreement.

> That the Plaintiff asserted the right to continue making payments in accordance with the parties' agreement due to the fact that the administration of the Estate had not been concluded and that the Personal Representative intended to distribute subject property to

herself upon conclusion of the Estate and finance the amount required to make the balloon payment in her own name.

That on October [18], 2005, Attorney Jerry K. Galyon sent Mary Darnell . . . a letter stating that the parties' agreement was terminated. This letter asserted as grounds for termination that no action had been taken by the Estate, that the buildings on the property had not been maintained in their current condition or better, that the real property taxes had not been paid, that late charges were owing, and that insurance on the buildings had not been maintained. The Estate paid the 2004 real estate taxes immediately upon receipt of said notice and there is no basis for other allegations of default. . . .

That the Plaintiff estate decided to honor the demand of Defendants . . . that the balloon payment be made immediately, within two weeks of receipt of the notice of default. The Plaintiff Estate made arrangements to distribute the Estate's interest in the purchase agreement to the decedent's spouse, Mary Darnell, and Mary Darnell obtained a loan commitment in order to complete the purchase immediately.

The Defendant's [sic] attorney failed to respond to calls from the Plaintiff's attorney and the bank's attorney for the purpose of making arrangements for the closing of the transaction. On November 16, 2005, and again on November 18, 2005, the Plaintiff's attorney forwarded written notice to the Defendant's [sic] attorney that the Plaintiff was exercising its right to prepayment of the outstanding balance remaining on the contract . . . and requesting that the parties proceed with closing immediately. . . .

(Paragraph numbering in original omitted.) Plaintiffs further alleged that, even though Mary Darnell had notified the Fenns of her intent to prepay the outstanding balance of the loan, the Fenns nevertheless sold the property to Teddy Jones, a trustee for an undisclosed principal. Plaintiffs sought specific performance of the contract and damages for breach of that contract.

The contract ("the Contract") was entered into on August 2, 1996. The title of the document is "Deposit Receipt and Contract for Sale and Purchase." The Contract refers to the Fenns as "SELLER" and identifies Mr. Darnell d/b/a Waldens Creek Stables as "BUYER." (Capitalization in original.) The Contract also contains an amortization schedule. The amortization schedule reveals a purchase price of $132,000, less a $5,000 deposit. Of the remaining $127,000 owed, the decedent was to make monthly payment of $999.11 for ten years. After ten years, the balance of $113,058.43 was to be made in one balloon payment. Financing was provided by the Fenns. The Contract states:

CLOSING AND POSSESSION: This contract shall be closed and the deed delivered on or before August 1, 2006, unless extended by other provisions of this contract. . . . Possession of the property shall be delivered to BUYER at closing . . . .

(Capitalization in the original.)

Attached to the Contract is an Addendum. The Addendum again refers to the parties as "BUYER" and "SELLER" and then lists several additional provisions. These provisions are:

The tenant agrees to lease the above described property under the following terms for a period of 10 years (120 months)[:]

The lease payment shall be $999.10[1] per month for 120 months with a Balloon payment of $113,058.43.

The tenant agrees to maintain the existing buildings in their current condition or better.

No buildings shall be removed from the property without written approval of the landlord.

The tenant shall be responsible for the property taxes and insurance on the building as they become due. The landlord will provide tenant with copies of these expenses. Property taxes and insurance will be pro-rated to the date of closing.

The tenant shall carry liability insurance with the landlord as co-insured for all claims arising during the term of this lease and any extensions.

A late charge of 5% will be charged for any payment received 10 days after the due date.

The tenant shall have the right to pre-pay this lease in whole or in part at his option at any time during the lease.

---

[1] Although insignificant, the amortization schedule calls for monthly payments of $999.11, and the Addendum indicates the payment to be $999.10.

Earnest money in the amount of $5,000 will be considered prepaid lease payments. . . . [2]

(Paragraph numbering in original omitted; footnote added.)

Approximately one month after the complaint was filed, the new purchaser, Teddy Jones, went to the subject property. As best we can tell from the record, the decedent's son, Benjamin F. Darnell, Jr., and several other individuals were living on the property and/or working at the stables. When the decedent's son and the others refused to leave, Mr. Jones filed criminal trespass warrants and the people on the property were forcibly removed.

Plaintiffs sued the Fenns and Mr. Jones (collectively referred to as "Defendants"). Defendants answered the complaint and generally denied any liability to Plaintiffs. The Fenns then filed a counterclaim seeking a declaratory judgment that Plaintiffs had materially breached the terms of the contract and that the Fenns were acting legally when they terminated the contract.

Following a trial, the court entered a judgment finding that the Contract was enforceable. The trial court ordered Ms. Darnell to pay the remaining balance on the Contract and divested Mr. Jones of title to the property. Prior to entering its judgment, the trial court made several findings from the bench. Initially, the trial court determined that the Contract was a ten-year lease "with purchase at the end of ten years." The court reached this conclusion for several reasons, including the fact that there was a balloon payment at the end of the lease as well as an amortization schedule attached to the Contract, neither of which would be present or necessary if it was simply a lease. The court further stated:

> [I]n many ways, [this lawsuit] comes down to this. Has this agreement of August 2, 1996, was it, validly terminated? Was it validly terminated as against the Darnells prior to the time the property was sold to Teddy Jones? The Court is constrained to hold that this Agreement was not validly terminated prior to the sale to Teddy Jones. It is clear to the Court, it is abundantly clear to the Court that early on, at least, there were multiple - multiple defaults in this Agreement on the part of the Darnells. There's just no question about that. . . . However, the parties went to court . . . in 2002 over those defaults and over this Agreement . . . and they settled their differences in 2002. They settled them. What that means is anything that came before 2002, . . . any default that came before 2002 is beside the point now. . . . The parties settled their differences as they existed at that time in September 2002. When you do that, you can't come back and complain about something that happened before that

[2] As already stated, the Contract is titled "Deposit Receipt and Contract for Sale and Purchase" and numerous times throughout identifies the parties as "BUYER" and "SELLER." It is unclear why the Addendum initially refers to the parties as "BUYER" and "SELLER" and then later refers to them as "Landlord" and "Tenant." The trial court found that the document was a ten-year lease "with purchase at the end of 10 years."

time. Now, what has happened since that time and that's really where this case comes down. . . . [I]t's not payment of the monthly payments for sure because Ms. Fenn herself testified that, "Look, since that time, since the settlement in 2002, the payments were always current." They were always current, or, in her words, "I would have foreclosed immediately."

The trial court then discussed various items contained in the letter to Ms. Darnell from the Fenns' attorney dated October 18, 2005, which set forth various reasons why the Fenns were terminating the Contract. The trial court discussed each of the grounds that were given for terminating the Contract, beginning with the claim that "[n]o action has been taken by the estate." As to this ground, the trial court found that the "bottom line" is that "the estate didn't have to take any action. All the estate had to do was to keep making the payments on time, which they were." The next ground involved the Darnells being late paying the 2004 property taxes. The trial court noted that the Contract provided that the Fenns would send to the Darnells the property tax notices. However, "for some reason they stopped sending [the notices] to [the Fenns] from the courthouse." Because it was the Fenns' duty to provide the notice to the Darnells and because that did not happen, the trial court found there was no breach when the 2004 taxes were paid late.

Next, the trial court discussed the Fenns' claim that the Darnells did not maintain insurance on the property. The trial court observed that even though there had been some "problems" with the insurance and the Darnells almost had their insurance policy cancelled, the fact remained that it was not cancelled. The court noted that the property was, at all relevant times, insured. Finally, the trial court discussed the Fenns' argument that the Darnells failed to maintain the condition of the property in the condition that existed at the inception of the Contract. According to the trial court:

> The Court holds that the Darnells were entitled, . . . [and after Mr. Darnell's death], his heirs were entitled to notice, notice of an intent, notice of default in the lease and of the intent to cancel the lease if the defaults were not cured. Now, I've listened closely to be sure. Ms. Fenn has testified, and so has Ms. Darnell testified that the year after [Mr. Darnell] died which that would put it in the year 2005, Ms. Fenn went to Ms. Darnell and met with her and talked about the property and talked about the condition of the property. There's no question in the Court's mind about that, and Ms. Fenn told Ms. Darnell, "You're going to have to clean it up, and by the way, I want you to buy it. I would like for you to go ahead and pay . . . the balloon payment . . . and buy it." The Court's convinced that happened. What did not happen at that point and time was that Ms. Fenn did not say, "If you don't get that done within 30 days, 40 days, or 50 days . . . I'm going to terminate this lease." She did not put the Darnells on notice that "Look, if you don't do this, I'm going to terminate this lease." . . . [Counsel for Plaintiffs] has referred to certain case law on commercial leases; and this property . . . had commercial buildings that had been put to commercial use. . . . The case law holding that

-6-

> before you can terminate a long-term lease, you've got to notify them. You've got to notify the tenant of the claim to default and give him or her an opportunity to cure it. . . . The letter of October 18 does not purport to give any such cure period. It just says the lease is terminated. Beyond that, the Court notes that in effect the property was sold or at the very least contracted for . . . before the letter went out terminating the lease. . . . The deed itself [to] Teddy Jones was signed by the Fenns, the sellers, October 14, four days before the lease was purported to be terminated.

Lastly, the trial court found that Mr. Jones was not a bona fide purchaser without notice. In reaching this conclusion, the court pointed out that the Darnells had recorded their lease nine days before the deed to Jones was recorded. The trial court also pointed out that Mr. Jones testified that he had been told that this property was in foreclosure and that attorney Galyon's office was handling the foreclosure. Therefore, he knew that someone was claiming an interest in the property.

The trial court concluded by ordering that Ms. Darnell was entitled to purchase the property and a decree of specific performance would be entered. The trial court gave Ms. Darnell thirty days to close on the remaining balance owed under the Contract.

II.

The Fenns and Mr. Jones appeal the trial court's final judgment, raising a combined four issues. First, the Fenns claim that the Contract was not enforceable because it was unclear as to whether it was a contract for sale or a lease. Second, the Fenns claim the trial court's judgment was in error because they had a right to terminate the lease because it was materially breached. Third, the Fenns argue that they gave adequate notice of termination of the lease and the trial court's judgment in this respect was in error. Finally, the Fenns and Jones claim that Jones was a bona fide purchaser for value and the trial court's judgment in this respect must be reversed.

III.

A review of findings of fact by a trial court is *de novo* upon the record of the trial court, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); **Brooks v. Brooks**, 992 S.W.2d 403, 404 (Tenn. 1999). Review of questions of law is *de novo*, without a presumption of correctness. *See* **Nelson v. Wal-Mart Stores, Inc.**, 8 S.W.3d 625, 628 (Tenn. 1999).

Trial courts, unlike appellate courts, are able to observe witnesses as they testify and to assess their demeanor and other indicia of credibility; trial courts are in a unique position to evaluate witness credibility. *See* **State v. Pruett**, 788 S.W.2d 559, 561 (Tenn. 1990). Accordingly, appellate courts will not re-evaluate a trial court's assessment of witness credibility absent clear and convincing evidence to the contrary. *See* **Wells v. Tennessee Bd. of Regents**, 9 S.W.3d 779, 783 (Tenn. 1999), **Humphrey v. David Witherspoon, Inc.**, 734 S.W.2d 315, 315-16 (Tenn. 1987).

IV.

In ***Marshall v. Jackson & Jones Oils, Inc.***, 20 S.W.3d 678 (Tenn. Ct. App. 1999), this Court observed that:

> The purpose of interpreting a written contract is to ascertain and to give effect to the contracting parties' intentions. *See Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975); *Gredig v. Tennessee Farmers Mut. Ins. Co.*, 891 S.W.2d 909, 912 (Tenn. Ct. App. 1994). In the case of written contracts, these intentions are reflected in the contract itself. Thus, the search for the contracting parties' intent should focus on (1) the four corners of the contract, *see Whitehaven Community Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998); *Hall v. Jeffers*, 767 S.W.2d 654, 657-58 (Tenn. Ct. App. 1988), (2) the circumstances in which the contract was made, *see Penske Truck Leasing Co. v. Huddleston*, 795 S.W.2d 669, 671 (Tenn. 1990); *Pinson & Assocs. Ins. Agency, Inc. v. Kreal*, 800 S.W.2d 486, 487 (Tenn. Ct. App. 1990), and (3) the parties' actions in carrying out the contract. *See Hamblen County v. City of Morristown*, 656 S.W.2d 331, 335 (Tenn. 1983); *Ballard v. North Am. Life & Cas. Co.*, 667 S.W.2d 79, 84 (Tenn. Ct. App. 1983).
>
> In the absence of fraud or mistake, courts should construe contracts as written. *See Frank Rudy Heirs Assocs. v. Sholodge, Inc.*, 967 S.W.2d 810, 814 (Tenn. Ct. App. 1997); *Whaley v. Underwood*, 922 S.W.2d 110, 112 (Tenn. Ct. App. 1995). The courts should accord contractual terms their natural and ordinary meaning, *see Evco Corp. v. Ross*, 528 S.W.2d 20, 23 (Tenn. 1975), and should construe them in the context of the entire contract. *See Wilson v. Moore*, 929 S.W.2d 367, 373 (Tenn. Ct. App. 1996); *Rainey v. Stansell*, 836 S.W.2d 117, 119 (Tenn. Ct. App. 1992). The courts should also avoid strained constructions that create ambiguities where none exist. *See Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 48 (Tenn. Ct. App. 1993).
>
> The courts may not make a new contract for parties who have spoken for themselves, *see Petty v. Sloan*, 197 Tenn. 630, 640, 277 S.W.2d 355, 359 (1955), and may not relieve parties of the contractual obligations simply because these obligations later prove to be burdensome or unwise. *See Atkins v. Kirkpatrick*, 823 S.W.2d 547, 553 (Tenn. Ct. App. 1991). Thus, when called upon to interpret a contract, the courts may not favor either party. *See Heyer-Jordan & Assocs., Inc. v. Jordan*, 801 S.W.2d 814, 821 (Tenn. Ct. App. 1990). However, when a contract contains ambiguous provisions, those

provisions will be construed against the party responsible for drafting them. *See Hanover Ins. Co. v. Haney*, 221 Tenn. 148, 153-54, 425 S.W.2d 590, 592-93 (1968); *Burks v. Belz-Wilson Properties*, 958 S.W.2d 773, 777 (Tenn. Ct. App. 1997).

*Marshall*, 20 S.W.3d at 681-82.

The Fenns' first argument is that the Contract is unenforceable because it is ambiguous and impossible to determine if it is a contract for sale or a lease. The Fenns claim that other portions of the Contract are ambiguous as well, such as its failure "to specify the amount of insurance that the tenant must carry." The trial court found that the Contract was an enforceable ten-year lease with purchase at the end of the ten years. As discussed previously, the Contract contained an amortization schedule showing the amount of principal and interest in each monthly payment. The Contract states that "this contract shall be closed and the deed delivered on or before August 1, 2006, unless extended by other provisions of this contract." The original sale price was $132,000. A down payment of $5,000 was made, bringing the amount owing to $127,000. At the end of ten years, the amount still owing after credit for 10 years of monthly payments was $113,058.43, which was the amount of the balloon payment.

As the trial court correctly noted, if the Contract were only a lease, there would be no reason for a balloon payment. Ms. Fenn certainly believed and acted like the Contract was a contract for sale, as evidenced by her request to Ms. Darnell in the spring of 2005 that the sale be completed and the balloon payment be paid early. While the Contract is not an example of perfect clarity, there is no doubt that all of the parties to the Contract understood that Mr. Darnell ultimately would be purchasing the property. The terms of the Contract were clear enough for the parties to operate under it for almost a decade. Furthermore, the terms of the Contract were clear enough for the Fenns to successfully take Mr. Darnell to court to enforce those terms. The Fenns cannot now be heard to complain about whether the Contract is sufficiently definite in an attempt to avoid their contractual obligations. When looking at "(1) the four corners of the contract[;] . . . (2) the circumstances in which the contract was made[;] . . . and (3) the parties' actions in carrying out the contract", *see Marshall*, 20 S.W.3d at 681-82, we conclude that the Darnells had the right to purchase the land in question at the end of ten years and that the Contract was not merely a lease. Therefore, we affirm the judgment of the trial court on this issue.

The next two issues are whether the Fenns had the right to terminate the Contract due to the Darnells' alleged breaches, and whether the Contract was properly terminated. On appeal, the Fenns argue that there were two breaches: the failure to timely pay the 2004 property taxes and the failure to maintain the property in the same condition it was in at the time the Contract was entered into. The trial court correctly determined that any alleged defaults that occurred prior to 2002 were resolved when the lawsuit brought by the Fenns against Mr. Darnell was settled. As to the property taxes, the Contract required the Fenns to send the Darnells the tax statement. Ms. Fenn acknowledged that she failed to do so and that when her attorney notified Ms. Darnell that the taxes were past due, the taxes were paid. Since Ms. Fenn did not comply with her contractual obligation, the failure of Mr. Darnell to timely pay the taxes cannot be considered a material breach, especially since they were eventually paid and the taxes brought current.

The Fenns argue that the condition of the property was not maintained and this matter was discussed with Ms. Darnell in the spring of 2005. They claim this was sufficient notice. However, no further mention of a claimed breach was made to Ms. Darnell and the Fenns continued to accept rent/mortgage payments for many more months, up until November 2005 when they abruptly notified Ms. Darnell that the Contract was terminated. When the Contract was terminated, the Fenns had already found a new buyer and deeded the property to Mr. Jones four days before they notified Ms. Darnell that the Contract was terminated.

Plaintiffs argue that the Fenns are estopped to deny a material breach and rely on *Mayor and Alderman of Town of Morristown v. Davis*, 110 S.W.2d 337 (Tenn. 1937), where the Supreme Court said:

> We perceive no difference whatever between the principle involved in this case and those growing out of leases, containing a clause that the term shall cease, and be absolutely determined, by a default in the payment of rent. In such cases, it is well settled that if the landlord, after the default, accepts the rent, he thereby waives the forfeiture, and cannot afterwards insist upon it; and much less will the tenant be allowed to say that he is discharged from his covenants by his own default in the payment of rent.

*Id*. at 341.[3]

The course of dealing between the parties herein is also relevant. In *Lively v. Drake*, 629 S.W.2d 900 (Tenn. 1982) the Supreme Court discussed an acceleration clause in a contract as follows:

> We are of the opinion that the course of dealing between the parties over a period of almost two years was such that appellants had been led to believe that irregular payments would be accepted without acceleration. Under those circumstances appellee should not be permitted to foreclose on the note without first calling attention of appellants to the fact that he was insisting upon the original terms, and that no further irregular payments would be accepted. He should have afforded them an opportunity to make current any arrears, if such existed.

---

[3] Plaintiffs also analogize to T.C.A. § 66-28-508 (2004) of the Uniform Residential Landlord and Tenant Act which provides:

> If the landlord accepts rent without reservation and with knowledge of a tenant default, the landlord by such acceptance condones the default and thereby waives such landlord's right and is estopped from terminating the rental agreement as to that breach.

\*   \*   \*

> As stated, under controlling Tennessee cases the acceptance of partial payment by the creditor after declaration of default did not, in and of itself, preclude foreclosure. Nevertheless the prior course of dealings between these parties was such that appellee was not entitled to exercise his option to accelerate without first advising appellants that late payments would no longer be accepted and without giving them an opportunity to cure any default that then existed. *See Brown v. Hewitt*, 143 S.W.2d 223 (Tex. Civ. App. 1940); 55 Am.Jur.2d, *Mortgages* § 391 (1971); Annot., 97 A.L.R.2d 997, 1006 *et seq.* (1964); *Cf. American National Insurance Co. v. Davidson*, 166 Tenn. 13, 57 S.W.2d 788 (1933) (irregular payment and acceptance of insurance premiums); *Mayor and Aldermen of Morristown v. Davis*, 172 Tenn. 159, 110 S.W.2d 337 (1937).
>
> Under all of the circumstances, we are of the opinion that the result reached by the Chancellor was equitable and appropriate.

*Lively*, 629 S.W.2d at 904.

The Contract at issue in this case, like every other contact entered into in this state, contains an implied duty of good faith and fair dealing. In **Brooks v. Networks of Chattanooga, Inc.**, 946 S.W.2d 321, 326 (Tenn. Ct. App. 1996) we noted that "[i]t is well-settled that every contract contains an implied duty of good faith and fair dealing in its performance and enforcement." (citing **TSC Industries, Inc. v. Tomlin**, 743 S.W.2d 169, 173 (Tenn. Ct. App.1987); **Hurley v. Tennessee Farmers Mutual Ins. Co.**, 922 S.W.2d 887 (Tenn. Ct. App. 1995)).

The facts establish that in the spring of 2005, Ms. Fenn told Ms. Darnell to clean up the property and then requested that Ms. Darnell make the balloon payment early, thereby completing the contract of sale. This would certainly lead Ms. Darnell to conclude that Ms. Fenn had every intention of completing the sale notwithstanding any problems with the condition of the property. Thereafter, Ms. Darnell continued to make the monthly payments on time and Ms. Fenn continued to deposit the checks for several months. After the Darnells had completed over 9 of the 10 years on the Contract, and even though several months earlier Ms. Fenn had indicated that she wanted the sale completed, the Fenns abruptly terminated the Contract without any forewarning to Ms. Darnell and deeded the property to Jones several days *before* even notifying Ms. Darnell that they considered the Contract terminated. Based on these facts, we conclude that Ms. Fenn unquestionably led Ms. Darnell to believe that she fully intended to proceed with the sale, notwithstanding the condition of the property. Ms. Fenn thereafter continued to accept monthly payments without protest for months and then, four days before pulling the rug out from under Ms. Darnell, Ms. Fenn deeded the property to Mr. Jones. We do not believe telling Ms. Darnell to clean up the property is sufficient to put Ms. Darnell on notice that Ms. Fenn was claiming a breach when the complaint as to the condition of the property was coupled with a request to complete the sale early. We also conclude that the actions of Ms. Fenn were a clear violation of her duty of good faith and fair dealing. Therefore, we hold that

Ms. Fenn is estopped from claiming Ms. Darnell was in breach of the Contract regardless of whether there actually was a breach pertaining to the condition of the property and regardless of whether Ms. Fenn was required to give adequate notice of the breach. The result reached by the trial court was manifestly "equitable and appropriate." *See Lively*, 629 S.W.2d at 904.

The final issue is whether Mr. Jones was a bona fide purchaser without notice. In *Aslinger v. Price*, No. E2006-00029-COA-R3-CV, 2006 WL 2521566 (Tenn. Ct. App. E.S., filed Sept. 1, 2006), *perm. app. denied Jan. 29, 2007*, this Court stated:

> This court has recently defined "bona fide purchaser" as "one who buys something for value without notice of another's claim to the item or of any defects in the seller's title; one who has in good faith paid valuable consideration for property without notice of prior adverse claims." *Rogers v. The First Nat'l Bank*, C/A No. M2004-2414-COA-R3-CV, 2006 WL 344759 at *12 (Tenn. Ct. App. M.S., Feb. 14, 2006)(emphasis added); *accord Henderson v. Lawrence*, 212 Tenn. 247, 369 S.W.2d 553, 556 (Tenn. 1963)(stating "A bona fide purchaser is one who buys for a valuable consideration without knowledge or notice of facts material to the title").
>
> As already stated, the trial court found that Mr. Price "was on inquiry notice of the existence of that [Aslinger-Giesemann] contract." There is abundant proof in the record supporting this conclusion, and the evidence does not preponderate against it. . . . [A]s the purchaser, Mr. Price was "(c)hargeable with notice, by implication, of every fact affecting the title which would be discovered by an examination . . . of every fact as to which the purchaser, with reasonable prudence or diligence, ought to become acquainted." *Hall v. Hall*, 604 S.W.2d 851, 853 (Tenn. 1980), quoting *Teague v. Sowder*, 121 Tenn. 132, 114 S.W. 484, 489 (Tenn. 1908).
>
> Moreover, this court has specifically held that "[a] contract or agreement to convey is held to be such an interest as will prevail as against a subsequent purchaser with notice." *Williams v. Title Guaranty & Trust Co.*, 31 Tenn. App. 128, 212 S.W.2d 897, 901 (Tenn. Ct. App. 1948). Regarding the concept of "inquiry notice," the Williams court stated as follows:
>
> > Notice of a prior interest which will be effective to charge a subsequent purchaser with knowledge of its existence may be either direct information of the prior right, or may consist of information of facts from which actual knowledge may be inferred; the notice need not be actual, but may be constructive or implied. It need not contain complete information of

> every fact material for the purchaser to know. Where actual notice of an outstanding interest is duly given, the purchaser is chargeable with notice of all that an inquiry of the person giving the notice of the outstanding interest would have disclosed.
>
> * * *
>
> Notice is either actual or implied. When anything appears which would put a man of ordinary prudence upon inquiry, the law presumes that such inquiry was actually made, and therefore fixes the notice upon him as to all legal consequences.
>
> *Williams*, 212 S.W.2d at 901; *see also Texas Co. v. Aycock*, 190 Tenn. 16, 227 S.W.2d 41, 46 (Tenn. 1950)(stating "whatever is sufficient to put a person upon inquiry, *is notice of all the facts to which that inquiry will lead*, when prosecuted with reasonable diligence and good faith." [emphasis in original]); *City Finance Co. v. Perry*, 195 Tenn. 81, 257 S.W.2d 1, 2 (Tenn. 1953); *Blevins v. Johnson County*, 746 S.W.2d 678, 682-83 (Tenn. 1988).

*Aslinger*, No. E2006-00029-COA-R3-CV, 2006 WL 2521566, at *4-5 (emphasis in original).

At trial, Mr. Jones testified that he heard the subject property was in foreclosure and that the Fenns' attorney, Jerry Galyon, was handling the foreclosure. Mr. Jones called attorney Galyon's office and spoke with Mr. Galyon's secretary, at which time he learned that the property was available for sale and the price was $113,058.43.[4] Mr. Jones acknowledged that attorney Galyon was also his attorney for civil litigation matters. In fact, Mr. Jones testified that he and Galyon are friends and ride motorcycles together. Other than a title search, Galyon was the attorney for both the Fenns and Mr. Jones for the transaction where the latter purchased the property. Mr. Jones also testified that he knew Mr. Darnell, that Mr. Darnell had passed away, and that Mr. Darnell owned the Walden Creek Riding Stables located on the property.

As quoted by this Court in **Aslinger**, the Supreme Court in *Texas Co. v. Aycock*, 190 Tenn. 16, 227 S.W.2d 41, 46 (Tenn. 1950) stated that "whatever is sufficient to put a person upon inquiry, *is notice of all the facts to which that inquiry will lead*, when prosecuted with reasonable diligence and good faith." (emphasis in original). **Aslinger**, 2006 WL 2521566, at *5. We believe Mr. Jones had sufficient inquiry notice that Ms. Darnell and her husband's estate were claiming an ownership interest in the property. There is absolutely no doubt that they were claiming such an interest and that attorney Galyon knew of that interest, as abundantly evidenced by Galyon's letter of October 18, 2005, terminating the Contract. Given that Mr. Jones and the Fenns had the same attorney and

---

[4] This amount is the exact same amount as Ms. Darnell's final balloon payment.

Jones knew this, if Mr. Jones had acted reasonably he would have spoken to Galyon himself, as opposed to Galyon's secretary, and made further inquiry about the property. This is even more apparent when considering that Mr. Jones and Galyon are friends. In short, a simple phone call to the right person would have prevented this litigation. A reasonable inquiry would have lead Mr. Jones to the fact that there was a contract for sale on the property, even if the validity of that contract was being questioned by the Fenns. Accordingly, we conclude that the facts do not preponderate against the trial court's conclusion that Mr. Jones was not a bona fide purchased without notice.

In summary, we conclude that the facts do not preponderate against the trial court's finding that pursuant to the Contract, Ms. Darnell is entitled to purchase the property. We further affirm the trial court's finding that Jones was not a bona fide purchaser without notice.

V.

The judgment of the trial court is affirmed.  This case is remanded for enforcement of the trial court's judgment and for collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellants, Charles Fenn and Dott Fenn, and their surety, for which execution may issue, if necessary.

_____
CHARLES D. SUSANO, JR., JUDGE