FILED
06/22/2017
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 23, 2017 Session

## J. P. MORGAN CHASE BANK, N.A. v. GARY ELDON FINLEY, ET AL.

**Appeal from the Chancery Court for Marshall County**
**No. 15370      J. B. Cox, Chancellor**

_____

### No. M2016-01178-COA-R3-CV

_____

A bank filed a complaint to reform a Deed of Trust to correct a scrivener's error in the legal description of a parcel of property in order to foreclose on the property. While the litigation was pending, the mortgagors conveyed title to the property to a third party, who claimed to be a bona fide purchaser for value without notice. The trial court concluded that the third party did not qualify as a bona fide purchaser because he was aware of the bank's litigation when he obtained title to the property. We affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Robert Allen Dalton, Jr., Lewisburg, Tennessee, for the appellant, Gary Eldon Finley.

Janet Strevel Hayes, Knoxville, Tennessee, and Mary Elizabeth Haltom White, Nashville, Tennessee, for the appellee, J.P. Morgan Chase Bank, N.A.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case concerns real property in Lewisburg, Tennessee. In April 2005, Robin and Kerry Weaver purchased a house located at 2070 Wild Cherry Drive, also known as Lot 26 of the Duncanwood Estates Subdivision, from Dean Baxter. The Weavers also obtained Lots 24 and 25, which were neighboring unimproved lots, from Mr. Baxter. The Weavers conveyed Lots 24 and 25 back to Mr. Baxter at the end of 2005. They obtained a mortgage from National Mortgage Network ("National Mortgage") in January

2006 and transferred a Deed of Trust to National Mortgage as security for the loan. A scrivener's error was made in the legal description of the property attached to the Deed of Trust. The legal description referenced Lots 24 and 25 rather than Lot 26, which was the parcel all the parties intended to be the security for the loan. The Derivation Clause of the Deed of Trust, however, correctly identified the encumbered property as 2070 Wild Cherry Drive, Lewisburg, Tennessee.

National Mortgage sold the Weavers' loan in the normal course, and J. P. Morgan Chase Bank, N.A. ("Chase") became the successor mortgagee some time later. Chase did not discover the scrivener's error in the Deed of Trust until the Weavers defaulted on their loan and Chase sought to initiate foreclosure proceedings. When Chase discovered the error in the legal description, it filed a complaint to reform the Deed of Trust.

While Chase's case against the Weavers was pending, the Weavers conveyed Lot 26 to Gary Eldon Finley by quitclaim deed. Chase amended its complaint to add Mr. Finley as a party defendant once it became aware of the transfer. In addition to seeking reformation of the Deed of Trust in its amended complaint, Chase asserted that the purported conveyance to Mr. Finley should be set aside because it was a fraudulent conveyance.

Chase moved for summary judgment in May 2014. The trial court denied the motion, stating that the issue of whether Mr. Finley knew about Chase's lawsuit when he purchased Lot 26 was a genuine issue of material fact that precluded summary judgment. Chase filed a renewed motion for summary judgment in April 2015 in which it asked the trial court to hold as a matter of law that the consideration Mr. Finley gave in exchange for the quitclaim deed was too low to qualify as "value" for the property as a matter of law. The court denied Chase's renewed motion, but it found the following facts were undisputed for purposes of the motion:

> 1. On January 12, 2006, the Weavers executed a Deed of Trust to Mark Rosser, Trustee, for the benefit of Chase, a successor in interest to National Mortgage Network.
> 2. The Weavers intended to encumber their home located at 2070 Wild Cherry Drive by executing the above mentioned Deed of Trust.
> 3. The Deed of Trust described another lot not owned by the Weavers and it did not correctly describe the real estate at 2070 Wild Cherry Drive.
> 4. Chase brought this action to correct the error in the description of the property in the Deed of Trust.
> 5. In their depositions the Weavers admitted that they intended to encumber 2070 Wild Cherry Drive with the Deed of Trust.
> 6. On June 22, 2012, while this litigation was active and ongoing, the Weavers quitclaimed their interest in 2070 Wild Cherry Drive (also known as parcel 1) to Mr. Finley.

7. The land, 2070 Wild Cherry Drive (parcel 1) originally sold in 2006 for $110,250.00.

8. Parcel 1 was appraised in 2012 for $96,100.00.

9. The consideration transferred with the quitclaim deed by Mr. Finley was two (2) trucks between 12 and 22 years old.

10. The Weavers also lived in parcel 1 for some time after the quitclaim without the obligation to pay any rent to Mr. Finley.

11. The Weavers now pay rent to Mr. Finley.

Following the trial court's order on its renewed motion, Chase filed a motion seeking clarification of the court's order. Specifically, Chase asked the court to state that (1) with respect to the Weavers, the Deed of Trust "shall be reformed to properly describe the Property" as Lot 26, 2070 Wild Cherry Drive and (2) the facts the court found undisputed for purposes of the motion for summary judgment "are, in fact, undisputed, and the Court need not and shall not entertain any additional proof, testimony, or evidence on them." The court declined to clarify its earlier order as Chase requested, but it did clarify its ruling as follows:

> The issue of whether the Deed of Trust should be reformed with respect to Robin and Kerry Weaver (the "Weavers") is premature, as such reformation may unfairly prejudice Defendant Gary Eldon Finley ("Mr. Finley"). However, based on (1) the admissions in the Weavers' Deposition, (2) the Weavers' failure to defend either of the motions for summary judgment filed by Chase or otherwise participate meaningfully in this litigation, and (3) the undisputed findings of fact by this Court, the Weavers are hereby estopped from asserting any position contrary to the facts found to be undisputed by this Court in its May 22, 2015 Order on the Motion.

The parties tried the case on March 10, 2016, and the trial court issued a written opinion the following month in which it concluded that Mr. Finley was not a bona fide purchaser for value without notice of the property at issue. Specifically, the court found the following based on the proof introduced at trial:

> It is undisputed that reformation of the Deed of Trust should occur as between Chase and the Weavers. Their testimony during the trial bolsters the Court's prior finding that the Weavers intended to encumber 2070 Wild Cherry Drive when they gave a note and Deed of Trust to National Mortgage. The Weavers bought their home on their land and intended to be bound to Chase's predecessor. They fully intended that their home would be subject to the Deed of Trust. Monies were extended from the mortgage company for the purpose of buying their home.

The problem with the Deed of Trust is that it described the wrong property in its legal description. Subsequent to determining that the real estate described in their Deed of Trust was incorrect, the Weavers were sued for reformation. This litigation began with the filing of the cause of action on December 9, 2009. While this suit was pending, the Weavers transferred their interest in their home to Defendant, Gary Finley. This transfer was accomplished via Quit Claim Deed dated June 22, 2012, and recorded in the Register's Office of Marshall County, Tennessee, at 1:09 pm on the same day. Consideration listed for the transfer was ZERO. No transfer tax was paid for the transfer. This consideration of -0- was listed even though there was apparently a contract for the sale of real estate that began with a price of $55,000.00 and was later amended to $50,000.00. All the testimony at the trial supports the fact that Mr. Finley did not pay zero to obtain this property. Further, Mr. Finley listed this property as having a value of $100,000.00 in his Bankruptcy filings. The uncontroverted testimony of the Weavers is that they have never received any money toward the purchase of their home. The only thing that the Weavers received was two trucks from the 1990's that were worth to them only about $4,000.00 total.

. . . .

. . . Mr. Finley claims that he was unaware of the controversy between the Weavers and Chase. His own testimony belies this position. During his testimony, he admitted that he knew that the Weavers had been sued by the bank. In his meeting with them he promised to "take on the fight." The only fight the Weavers had at that time was the lawsuit to reform the Deed of Trust. The only fight they had was with Chase. . . .

. . . .

Mr. and Mrs. Weaver initially testified at their deposition that Mr. Finley knew of the dispute at the time of his purchase of their land. Only after having been allowed to live on the property without the obligation to pay either the mortgage they signed up for or rent to Mr. Finley did their recollection become foggy. The Court credits their prior deposition testimony. Mr. Finley bought the property in part based on the premise that he would "handle" the problem with Chase. Mr. Finley was to "take on the fight." He knew what the fight was about. He knew that there was a problem between the Weavers and Chase.

The Weavers now have an economic incentive to testify the way they did at trial. They have lived in the property for an extended period of

- 4 -

time, ever since the transfer, without the obligation to pay rent to Mr. Finley. All this time they were not paying the mortgage that they say they made to buy the property in question. Clearly, Mr. Finley knew about the controversy at the time he took title to the real estate in question. His testimony to the contrary is simply not credible. The Court holds that he is not a bona fide purchaser. Mr. Finley was on actual notice of a controversy between the Weavers and the mortgage company.

Further, the court finds that Mr. Finley is not a bona fide purchaser because he did not give value for the purchase. First, the listed consideration on the quit claim deed is zero. Secondly, the only consideration that actually changed hands surrounding this real estate transaction is the transfer of two vehicles. Mr. Finley values these vehicles at $20,000.00. Mr. Weaver initially testified that they were worthless, but actually ascribed a value between $2,000.00 and $5,000.00 dollars. Mr. Finley's valuation of these trucks is vastly inflated and also incredible. The Court finds that the trucks were worth $5,000.00. The court credits Mr. Weaver's testimony. The court finds that Mr. Finley's testimony concerning these vehicles is not credible.

No other consideration has been paid by Mr. Finley for the transfer of 2070 Wild Cherry Drive. . . .

Also, nowhere in the signed agreement is there any reference to rent or the forbearance of collecting rent from the Weavers. The non-payment of rent by the Weavers is a true indicator that everyone, especially Mr. Finley, knew of the issues with Chase. No rent exchange agreement exists. No price for rent exists. No length of term for rent in exchange for the transfer of the real estate exists. Mr. Finley's only argument is that he is entitled to offset against the price of the real estate for the time the Weavers have been there rent free.

Despite his able counsel's advocacy, and calculation of the "value" given for this property, Mr. Finley has merely given $5,000.00 worth of trucks for a piece of property worth greater than $100,000.00. Mr. Finley has not given value for the property. Therefore, since Mr. Finley is not a bona fide purchaser for value, and since it is uncontroverted that reformation should occur as between Chase and the Weavers, the Court must reform the Deed of Trust. That reformation will apply against Mr. Finley since he is not a bona fide purchaser for value. This ruling places Chase in the correct position as having the first and superior Deed of Trust concerning 2070 Wild Cherry Drive.

Mr. Finley appeals from the trial court's judgment and argues that the trial court erred in finding that (1) he was not a bona fide purchaser without notice and (2) he was not a bona fide purchaser for value. Chase contends that if this Court does not uphold the trial court's reformation of the Deed of Trust, the Weavers' conveyance to Mr. Finley should be set aside as a fraudulent transfer.

## II. ANALYSIS

### A. Standard of Review

In cases tried without a jury, appellate courts review the trial court's findings of fact de novo upon the record, affording the trial court's findings a presumption of correctness unless the evidence preponderates to the contrary. TENN. R. APP. P. 13(d); *Milledgeville United Methodist Church v. Melton*, 388 S.W.3d 280, 285 (Tenn. Ct. App. 2012). Evidence does not preponderate against a trial court's finding of fact unless it "support[s] another finding of fact with greater convincing effect." *Melton*, 388 S.W.3d at 285. A trial court's conclusion of law enjoys no presumption of correctness, however, and we review all issues of law de novo. *ABN AMRO Mortg. Grp., Inc. v. S. Sec. Fed. Credit Union*, 372 S.W.3d 121, 126 (Tenn. Ct. App. 2011); *Estate of Darnell v. Fenn*, 303 S.W.3d 269, 275 (Tenn. Ct. App. 2009).

### B. Bona Fide Purchaser

A chancery court has the authority to reform deeds that are the product of fraud or mistake. *Bingham v. Doles*, No. W2002-00104-COA-R3-CV, 2002 WL 32335659, at *4 (Tenn. Ct. App. Oct. 17, 2002) (citing *Wallace v. Chase*, No. W1999-01987-COA-R3-CV, 2001 WL 394872, at *3 (Tenn. Ct. App. Apr. 17, 2001)). As the Court of Appeals has explained,

> To be the subject of reformation, a mistake in a deed must have been mutual or there must have been a unilateral mistake coupled with fraud by the other party, such that the deed does not embody the actual intention of the parties. *See Anderson v. Howard*, 18 Tenn. App. 169, 74 S.W.2d 387, 389-90 (Tenn. Ct. App. 1934); *Pittsburg Lumber Co. v. Shell*, 136 Tenn. 466, 189 S.W. 879, 880 (Tenn. 1916). Reformation may be granted against the original parties, their privies, those claiming under them with notice, and third persons who will suffer no prejudice thereby. *See* 76 C.J.S. *Reformation of Instruments* § 54 (1994).

*Bingham*, 2002 WL 32335659, at *4 (quoting *Wallace*, 2001 WL 394872, at *3). The court continued, however, that "a court of chancery may not reform a deed against a bona fide purchaser for value without notice." *Id.* (quoting *Wallace*, 2001 WL 394872, at *3). The Court of Appeals has defined a "bona fide purchaser" as "'one who buys something

for value without notice of another's claim to the item or of any defects in the seller's title; one who has in good faith paid valuable consideration for property without notice of prior adverse claims.'" *Fenn*, 303 S.W.3d at 279 (quoting *Aslinger v. Price*, No. E2006-00029-COA-R3-CV, 2006 WL 2521566, at *4 (Tenn. Ct. App. Sept. 1, 2006)); *see also Rogers v. First Nat'l Bank*, No. M2004-02414-COA-R3-CV, 2006 WL 344759, at *12 (Tenn. Ct. App. Feb. 14, 2006).

### 1. Evidence Introduced at Trial

Mr. Finley asserts that he was not aware of either Chase's lien on the Weavers' house or Chase's lawsuit against the Weavers when he obtained title to the property located at 2070 Wild Cherry Drive in 2012. The evidence in the record is highly disputed and inconsistent with regard to this issue. Mr. Finley testified that he was aware of a $40,000 lien that Dean Baxter had on the property because Mr. Baxter wanted to sell Mr. Finley his lien. Mr. Finley explained that when he went out to look at the property, he decided he would rather purchase the property than purchase Mr. Baxter's lien. Mr. Finley testified that he had someone perform a title search prior to the closing and that no encumbrances were found on 2070 Wild Cherry Drive. Mr. Baxter told Mr. Finley he had a $40,000 lien on the property, but Mr. Finley believed Mr. Baxter's lien "was bogus."

The evidence with regard to the value Mr. Finley transferred in exchange for the property reveals that Mr. Finley and the Weavers entered into a "Lot/Land Purchase and Sale Agreement" that Mr. Finley signed on September 29, 2011, and that the Weavers each signed on October 10, 2011. The purchase price was listed at $55,000. Then, on June 22, 2012, Mr. Finley signed a promissory note for $30,000 that included the handwritten language "due Jan. 1, 2013." Additional handwriting underneath the "due Jan. 1, 2013" language reads "trade 99 Ford truck & 99 Ford 4 whl Rgs. – 10,000 2-4 wks of 6/22/2012." Mr. and Mrs. Weaver each testified that Mr. Finley transferred two trucks to them[1] but never paid them anything on the promissory note.[2]

The Weavers gave their depositions in November 2012. By the time of the trial in March 2016, they were unable to remember the course of events dating from 2011 and 2012. As a result, Chase introduced portions of their deposition testimonies into evidence during the trial. Mr. Weaver read the following portions of his deposition into evidence:

---

[1]Mr. Weaver testified that Mr. Finley gave them "the two trucks," "nothing else," and that the trucks "was [sic] broke down when I got them." He also testified that "if I would have bought them back then, it would have been about a thousand, two thousand [dollars]."

[2]Mr. Finley filed a petition for bankruptcy in November 2012, and he failed to identify the Weavers as creditors. Mr. Finley filed an amended schedule of real property in January 2013 in which he listed the value of 2070 Wild Cherry Drive at $100,000.

I'll explain that Dean was trying to sell Mr. Finley the $40,000 lien that he had on our house, and Mr. Baxter sent Mr. Finley to our house to talk with us, and Gary was talking with us, Gary Finley. And subsequently he was trying to go through all this paperwork trying to figure it out, too, and he asked if we'd do some work for him. We was doing some work for him. He said, why don't you all quitclaim the house to me, I'll give you a little money out of it, and I'll go to Chase, and I'll settle up with Chase.

. . . .

Mr. Finley said I can fix it for you, I'll talk with Chase, and I'm going to buy the house from Chase.

Following Mr. Weaver's reading of this portion of his deposition testimony into evidence, Mr. Weaver continued testifying:

Q: So you believe that that's what he was going to do at that time?

A: Gary said he was going to take it - - he figured everything out.

. . . .

Q: Did Mr. Finley know - - did you tell Mr. Finley about this lawsuit?

A: Mr. Finley looked over my paperwork.

Q: And with your paperwork, did you have the complaint?

A: I got everything in a box, and he went and done some digging at the courthouse.

In response to a question by his attorney, Mr. Weaver explained that Mr. Finley "went through the paperwork, went through the paperwork. Went to the courthouse, went through the paperwork."

Mrs. Weaver was shown her deposition testimony when she was on the witness stand. When counsel inquired whether she remembered being asked during her deposition whether Mr. Finley knew about Chase's Deed of Trust, Mrs. Weaver responded "yes," "at one time I probably knew that he knew, yeah." Referring to her deposition transcript, Mrs. Weaver was asked:

Q: Then it goes on: Gary's going to talk to Chase, and they're going to -- Chase and Gary are going to come to an agreement.

A: That's what I was told. That's what Gary meant by he would take it on and he would handle with you all.

Mrs. Weaver continued:

He was more willing to go through, help us with everything that he needed to help us with. Yes. He said he would help us any way he could.

. . . .

I felt that he was going to take the battle on. Whatever happened, you know, happened -- he was going to take the battle on. We were left out of it. You know, we washed our hands. We didn't have to worry about it anymore. There wasn't going to be any more harassment, people coming knocking on our door, Hey, your house is being foreclosed on, you got three days, blah blah blah.

### 2. Mr. Finley's Arguments on Appeal

Mr. Finley argues on appeal that the trial court erred in relying on Mr. and Mrs. Weaver's deposition testimony to conclude that Mr. Finley knew about Chase's claim to the property in 2012, when the Weavers conveyed the title to him. Mr. Finley describes the Weavers' testimony as prior inconsistent statements of non-party witnesses that could be used only to impeach the Weavers' trial testimony and claims that the trial court erred by treating the statements as substantive evidence.

We disagree with Mr. Finley's argument for the following reasons. First, although the Weavers did not appeal the trial court's judgment and are not parties to this appeal, they were party defendants at trial. The Weavers were never dismissed from the case by the trial court. They testified at the trial as parties, not non-party witnesses as Mr. Finley asserts. Moreover, the trial court provided relief to Chase as against the Weavers when it wrote in its Final Order that "[t]he deed of trust executed by Robin and Kerry Weaver . . . shall be reformed to encumber the following real property . . . ."

Second, as Chase correctly points out, the Weavers' deposition testimony was admissible as substantive evidence because it qualified as an admission by a party-opponent pursuant to Tennessee Rule of Evidence 803(1.2). Rule 803, entitled "Hearsay exceptions," states that admissions by party-opponents are not excluded by the hearsay rule. Rule 803(1.2) defines an admission by a party-opponent, in pertinent part, thusly:

A statement offered against a party that is (A) the party's own statement in either an individual or a representative capacity, or . . . (F) a statement by a person in privity of estate with the party.

The Court of Appeals has discussed Tenn. R. Evid. 803(1.2) and explained that a party's assertion may never be excluded from evidence as hearsay if it is offered into evidence by a party-opponent. *Logan v. Estate of Cannon*, No. E2015-02254-COA-R3-CV, 2016 WL 5344526, at \*6 (Tenn. Ct. App. Sept. 23, 2016) (citing *Curtis v. Van Dusen*, 723 S.W.2d 648, 650 (Tenn. Ct. App. 1986)). The *Logan* court stated that a party's out-of-court assertion "'is always excepted to the hearsay rule as an admission of a party-opponent.'" *Id*. (quoting *Curtis*, 723 S.W.2d at 650)); *see also Nadler v. Mtn. Valley Chapel Bus. Trust*, No. E2003-00848-COA-R3-CV, 2004 WL 1488544, at \*5 (Tenn. Ct. App. June 30, 2004) ("Because Mr. Lucas is a party to this action, any prior inconsistent statements made in his deposition testimony 'are admissible both for the purpose of impeachment and as substantive evidence because they are admissions by a party-opponent under Tenn. R. Evid. 803(1.2).'") (quoting *Burgess v. Harley*, 934 S.W.2d 58, 68 (Tenn. Ct. App. 1996)). As a result, the trial court was entitled to treat the Weavers' deposition testimony that was read into evidence as substantive evidence under Tenn. R. Evid. 803(1.2)(A).

Turning now to subsection (F) of Tenn. R. Evid. 803(1.2), that portion of the rule "was intended to allow admissions by predecessors in title to come in against a current titleholder party." *Lohmann v. Lohmann*, No. E2008-02787-COA-R3-CV, 2009 WL 3163141, at \*6 (Tenn. Ct. App. Oct. 2, 2009). Mr. Finley does not dispute that the Weavers were his predecessors in title to 2070 Wild Cherry Drive. Thus, the trial court was also entitled to consider the Weavers' deposition testimony that was introduced into evidence during the trial as substantive evidence against Mr. Finley, the current titleholder to the property pursuant to Tenn. R. Evid. 803(1.2)(F).

Third, Mr. Finley failed to object to Chase's introduction into evidence of the Weavers' deposition testimony during the trial. Because of his failure to object, the Weavers' prior deposition testimony became admissible as substantive evidence even without considering Tenn. R. Evid. 803(1.2). *See State v. Smith*, 24 S.W.3d 274, 280, 283-84 (Tenn. 2000) (stating that when one party fails to object to evidence that may be objectionable under the rules of evidence, that evidence becomes admissible as substantive evidence); *see also State v. Evans*, W2005-00161-CCA-R3-CD, 2006 WL 1381585, at \*9-10 (Tenn. Crim. App. May 17, 2006).

The evidence in this case was inconsistent and confusing. "When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the manner and demeanor of the witnesses while testifying is in a far better position than this Court to decide those issues." *Melton*, 388 S.W.3d at 285; *see also Fenn*, 303 S.W.3d at 275. As the trier of fact, the trial court was able to observe the witnesses as they testified to assess their demeanor and evaluate their credibility. Because we do not have the same opportunity as trial courts to observe witnesses' demeanors, "appellate courts will not re-evaluate a trial court's assessment of witness credibility absent clear and convincing evidence to the contrary." *Fenn*, 303

S.W.3d at 275; *see also State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990) ("Questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by the trier of fact, and not in the appellate courts.").

In this case, the trial court found Mr. Finley's testimony that he was not on notice of Chase's lawsuit against the Weavers to be "simply incredible." The court wrote, "it is readily apparent to the Court that Mr. Finley was aware of the controversy between the Weavers and Chase." Turning to the Weavers' testimony, the trial court credited their deposition testimony over their trial testimony. As the trial court explained, Mr. and Mrs. Weaver testified during their deposition[3] that Mr. Finley knew about their dispute with Chase when he obtained title to 2070 Wild Cherry Drive, and their recollections became "foggy" by the time of trial only after they were allowed to live on the property without being required to pay either the mortgage or rent to Mr. Finley. The trial court wrote:

> Mr. Finley bought the property in part based on the premise that he would "handle" the problem with Chase. Mr. Finley was to "take on the fight." He knew what the fight was about. He knew that there was a problem between the Weavers and Chase. . . . The Weavers now have an economic incentive to testify the way that they did at trial. They have lived in the property for an extended period of time, ever since the transfer, without the obligation to pay rent to Mr. Finley. All this time they were not paying the mortgage that they say they made to buy the property in question. Clearly, Mr. Finley knew about the controversy at the time he took title to the real estate in question. His testimony to the contrary is simply not credible.

Thus, the trial court held, Mr. Finley does not qualify as a bona fide purchaser because he was on actual notice of a controversy between the Weavers and Chase.

Mr. Finley contends that if the Weavers' deposition testimony is accepted as substantive evidence, the Weavers' trial testimony cancels out their deposition testimony. As support for this argument, Mr. Finley relies on the cases *SunTrust Bank v. Best*, E2015-02122-COA-R3-CV, 2016 WL 4498401 (Tenn. Ct. App. Aug. 26, 2016), and *Helderman v. Smolin*, 179 S.W.3d 493 (Tenn. Ct. App. 2005). In *SunTrust Bank*, the Court of Appeals wrote that "'[i]t is a rule of law in this state that contradictory statements of a witness in connection with the same fact have the result of 'cancelling each other out.'" *SunTrust Bank*, 2016 WL 4498401, at *11 (quoting *Taylor v. Nashville Banner Publ'g Co.*, 573 S.W.2d 476, 482 (Tenn. Ct. App. 1978)) (further quotations and citations omitted). The *Helderman* court agreed, stating that if a party takes a position during the pendency of a case, he or she "'must act consistently with it. One cannot play fast and loose.'" *Helderman*, 179 S.W.3d at 501-02 (quoting *Stamper v. Venable*, 97

---

[3]The record reflects that Mr. and Mrs. Weaver were deposed together rather than individually.

S.W. 812, 813 (Tenn. 1906)). The *Helderman* court further explained that "'if the proof of a fact lies wholly with one witness, and he both affirms and denies it, and there is no explanation, it cannot stand otherwise than unproven.'" *Id.* at 502 (quoting *Johnston v. Cincinnati N.O. & T.P. Ry. Co.*, 240 S.W. 429, 436 (Tenn. 1922)). The *Helderman* court cautioned, however, that the rule of cancellation "only applies . . . 'when the inconsistency in the witness's testimony is unexplained and when neither version of his testimony is corroborated by other evidence.'" *Id.* at 502 (quoting *Taylor*, 573 S.W.2d at 483).

Mr. Finley does not establish that Mr. Weaver or Mrs. Weaver's deposition testimony offered into evidence was contradicted by their testimony at trial. It is true that the Weavers testified at their depositions that Mr. Finley knew about Chase's Deed of Trust when he obtained title to 2070 Wild Cherry Drive and that they did not give the same testimony during trial. It is also true that Mr. Weaver was unable to remember at trial the names of the banks with which he had mortgages. However, neither Mr. Weaver nor Mrs. Weaver testified during the trial that Mr. Finley did *not* know about Chase's Deed of Trust or about the litigation. Rather, they were simply equivocal about what Mr. Finley knew and seemed not to remember.

When Mr. Weaver was asked at trial whether he told Mr. Finley about Chase's lawsuit before the property was conveyed, Mr. Weaver responded that Mr. Finley looked through Mr. Weaver's paperwork that he had in a box at his house. When asked whether Chase's complaint was in the box, Mr. Weaver replied, "I got everything in a box, and he went and done some digging at the courthouse." When Mrs. Weaver was shown her deposition and asked whether she remembered being asked whether Mr. Finley knew about Chase's Deed of Trust, Mrs. Weaver responded "yes," "at one time I probably knew that he knew, yeah." Also, when Mrs. Weaver was asked about the portion of her deposition testimony where she testified, "Gary's going to talk to Chase, and they're going to - - Chase and Gary are going to come to an agreement," Mrs. Weaver testified, "That's what I was told. That's what Gary meant by he would take it on and he would handle with you all."

After comparing the Weavers' deposition testimony that was offered into evidence with the testimony provided at the trial, we do not find that they are contradictory so as to cancel each other out, as Mr. Finley argues. In any event, the trial court explained away any contradiction that may have been created by noting that the Weavers had an economic incentive to testify as they did at trial. As the trial court noted, the Weavers have been able to live in their house since they transferred title to Mr. Finley without making mortgage or rental payments, and their situation will likely change drastically if

Chase is granted relief and reforms its Deed of Trust. We do not find that the trial court erred in relying on the Weavers' deposition testimony as substantive evidence.[4]

Having concluded that Mr. Finley was not a bona fide purchaser without notice of Chase's prior lien on 2070 Wild Cherry Drive and its complaint against the Weavers, we need not address whether Mr. Finley was a bona fide purchaser for value. *See Fenn*, 303 S.W.3d at 279 (stating that one cannot be bona fide purchaser without proving both lack of notice and transfer of value).

### III. CONCLUSION

For the reasons stated above, we affirm the trial court's judgment that Chase is permitted to reform its Deed of Trust and that Mr. Finley's interest in 2070 Wild Cherry Drive is subject to this reformation and the Deed of Trust recorded in Record Book 443, Pages 420-38, Register's Office of Marshall County, Tennessee. Costs of this appeal shall be taxed to the appellant, Gary Eldon Finley, for which execution shall issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[4]We also find Mr. Finley was on "inquiry notice" because the correct address was included in the Derivation Clause of Chase's Deed of Trust that was recorded in January 2006, over six years before Mr. Finley obtained any interest in the property. *See ABN AMRO*, 372 S.W.3d at 131-32; *Holiday Hospitality Franchising, Inc. v. States Res., Inc.*, 232 S.W.3d 41, 49 (Tenn. Ct. App. 2006).