IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 6, 2025 Session

## KARL ROBERT KOKKO ET AL. V. THOMAS L. MOORE, JR. ET AL.

**Appeal from the Chancery Court for Moore County**
No. 3043      J. B. Cox, Chancellor
_____

### No. M2024-00898-COA-R3-CV
_____

This is an action for breach of contract, unlawful procurement of breach of contract, and civil conspiracy arising out of a purchase and sale agreement related to real property in Moore County, Tennessee. The buyers, Karl and Beth Ann Kokko, alleged that the sellers, Thomas and Wendy Moore, breached the contract by failing to fulfill their obligation to close. The Kokkos further alleged that Gregg and Daffney Driver induced the breach by conspiring with the Moores to sell the property to the Drivers' company, MOCAR Enterprises, Inc. The listing realtor, Crye-Leike of Nashville, Inc., intervened to collect a commission. The trial court took several actions that are at issue on appeal. First, the court granted the Kokkos' Motion for Sanctions against the Drivers and MOCAR and entered a default judgment against them on the claims for unlawful procurement and conspiracy. Second, the court granted the Kokko's Motion for Partial Summary Judgment and entered judgment against the Moores on the claims for breach of contract and conspiracy. Third, the court set aside the MOCAR deed and ordered specific performance of the contract. And fourth, the court granted Crye-Leike's claim against the Moores for a commission. This appeal followed. We conclude that summary judgment was inappropriate on the Kokkos' claim for civil conspiracy but affirm the trial court in all other respects. Thus, we vacate the trial court's judgment in part, affirm it in part, and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Vacated in Part, and Remanded.**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J., joined.

Donald N. Capparella, Michael Anthony Johnson, Jacob Andrew Vanzin, and Tyler Chance Yarbro, Nashville, Tennessee, for the appellants, Thomas L. Moore, Jr., Wendy Moore, Greg Driver, Daffney Driver, and MOCAR Enterprises, Inc.

Raymond W. Fraley, Jr., and Johnny D. Hill, Jr., Fayetteville, Tennessee, for the appellees, Karl Robert Kokko and Beth Ann Kokko.

B. Thomas Hickey, Jr., Chattanooga, Tennessee, for the appellee Crye-Leike of Nashville, Inc.

# OPINION

## FACTS AND PROCEDURAL HISTORY

The Moores owned a 100-acre tract of real property ("the Property") on Louse Creek Road in Mulberry, Tennessee. In July 2020, the Moores listed the Property for sale through Crye-Leike real estate agent Ty Irby and executed an exclusive listing agreement.

On January 21, 2021, the Kokkos submitted an offer to purchase the Property for $700,000 through their realtor, Crye-Leike real estate agent Angela Walker. The offer had an escalation clause that provided: "In the event of multiple offers, Buyer agrees to offer $1000 over highest offer price up to $800,000. Seller to provide proof of competing offer(s)." The Kokkos also agreed to provide proof of available funds to close within five days of the binding agreement date in the form of a "lender's commitment letter." To that end, the Kokkos included an "Approval Letter" from their bank stating that they were approved for a loan in the amount of the "purchase price."

On January 22, 2021, the Moores received four competing offers, including one from Hugh Ogletree, Jr., for $720,000 and another from MOCAR Enterprises, Inc., for $730,000. Although the MOCAR offer was higher, the Moores sent a copy of the Ogletree offer to the Kokkos along with a counteroffer to sell the Property for $721,000. But before the Kokkos accepted the counteroffer, Mr. Irby told Ms. Walker that there was a "5th offer" for $730,000. Still, the Kokkos accepted the $721,000 counteroffer, and the closing date was set for March 3, 2021.

On the day after, January 23, 2021, Mr. Moore spoke with Greg Driver, the CEO of MOCAR. Mr. Moore knew Mr. Driver because he owned land that abutted the Property. Mr. Moore claimed that Mr. Irby did not tell him that the MOCAR offer was higher than the Ogletree offer. Mr. Moore later asked if MOCAR would still be interested in purchasing the Property if the Kokko deal fell through, and Mr. Driver said yes.

A week later, on February 1, 2021, the Moores sent Mr. Irby an email claiming, *inter alia*, that the Kokkos' Approval Letter did not comply with the contract because it was not a "lender's commitment letter." The next day, February 2, 2021, the Kokkos provided the Moores with a "Commitment/Approval Letter" from their bank, stating that they had been approved for a $721,000 loan. Three weeks after that, on February 23, 2021,

- 2 -

the Moores told the Kokkos that the Property was no longer for sale. The Kokkos responded by stating that they intended to move forward with the purchase.

On the day of the closing, March 3, 2021, the Kokkos traveled to the Property to conduct a final inspection. Mr. Moore, however, turned the Kokkos away and repeated that the Property was not for sale. The Kokkos then went to their closing agent's office and signed the closing documents. The Kokkos, however, did not tender funds for the purchase, and the Moores did not go to the closing.

The Kokkos commenced this action on March 8, 2021, and filed a *lien lis pendens* against the Property. On March 11, 2021, the Moores sold the Property to MOCAR.

As amended, the Complaint asserted a claim for breach of contract against the Moores and a claim for inducement of breach of contract against MOCAR, Mr. Driver, and Mr. Driver's wife and president of MOCAR, Daffney Driver (collectively, "the Driver Defendants"). The Complaint also asserted a claim for civil conspiracy against both the Moores and the Driver Defendants and sought awards of specific performance, compensatory damages, and attorney's fees and costs.

The Moores responded by asserting a counterclaim for breach of contract against the Kokkos and third-party claims against Mr. Irby and Ms. Walker for intentional and negligent misrepresentation.[1] Crye-Leike of Nashville, Inc., later filed an intervening complaint against the Moores for a commission.

## Discovery Sanctions

In June 2021, the trial court imposed monetary sanctions against the Moores for failing to appear at their depositions. And in early 2022, Mr. Irby and Ms. Walker filed motions to compel the Moores' response to discovery requests. The court then entered a scheduling order requiring all parties to complete written discovery by April 11, 2022.

The Kokkos served interrogatories and requests for production of documents on each of the Driver Defendants on March 1, 2022, but the Driver Defendants did not respond by April 1, the deadline imposed by Rules 33.01 and 34.02 of the Tennessee Rules of Civil

---

[1] The claims against Mr. Irby and Ms. Walker are not at issue on appeal. The trial court granted summary judgment on the claims against Ms. Walker in December 2022, and the claims against Mr. Irby were voluntarily dismissed in September 2023. Nonetheless, on appeal, the Moores and the Driver Defendants moved for judicial notice of the fact that they re-filed their claims against Mr. Irby in the Rutherford County Chancery Court. The Kokkos and Crye-Leike opposed the motion but acknowledged that the action was filed. We reserved judgment on the motion pending oral argument, but none of the parties addressed the matter. Having considered the motion and responses thereto, we deny the motion to take judicial notice but find it uncontested that claims were re-filed against Mr. Irby. We also find this fact irrelevant to the disposition of this appeal.

Procedure. The Driver Defendants also failed to submit any discovery responses by April 11, the deadline imposed by the court's Scheduling Order. Therefore, the Kokkos filed a Rule 37.01 motion to compel the Driver Defendants to submit to discovery.

Pursuant to an agreed order, the Driver Defendants were ordered to submit their discovery responses no later than May 6, 2022. However, they failed to comply with the order.

Resultingly, the Kokkos filed a Rule 37.02(C) motion for sanctions against the Driver Defendants, asking the court to strike the Driver Defendants' answers to the Complaint and to enter a default judgment against each of them on the Kokkos' claims for inducement of breach of contract and civil conspiracy. The Motion for Sanctions, which was hand delivered to the Driver Defendants' counsel on May 16, 2022, also gave notice that it was set to be heard on May 23, 2022.

On May 19, 2022, the Driver Defendants filed their Response to the Motion for Sanctions in which they opposed the motion, stating that their failure to respond to discovery was not willful but the result of obstacles in downloading messages from their cell phones. The Driver Defendants represented that they would be filing their discovery responses that day or the next, but the responses were not filed with the court until May 22, the day before the hearing.[2] The Driver Defendants also asserted that their attorney had a scheduling conflict in another county and requested a continuance. When the Motion for Sanctions came on for hearing on May 23, the court announced that it would not agree to a continuance, as requested by the Driver Defendants, and proceeded to hear argument from counsel for the Kokkos. Thereafter, the court took the motion under advisement.

Pursuant to an order entered on August 29, 2022, the trial court granted the Kokkos' Motion for Sanctions. In a detailed written order that included findings of fact and conclusions of law, the court found that the Driver Defendants had violated two court orders and hindered the Kokkos' ability to prepare for the Drivers' depositions—which were scheduled for June 9, 2022—and trial. The court also found it significant that the same attorney represented the Driver Defendants and the Moores, and that monetary sanctions had already been imposed against the Moores. For these and other reasons detailed in the written order, the court entered a default judgment against the Driver Defendants on the claims for civil conspiracy and inducement of breach of contract.

*Motion for Partial Summary Judgment*

After completing discovery, the Kokkos moved for summary judgment against the Moores on the parties' competing claims for breach of contract. The Moores opposed the

---

[2] The Motion for Sanctions was filed on May 16, 2022, the Response was filed on May 19, 2022, and the discovery responses were filed on May 22, 2022. The hearing occurred on May 23, 2022.

motion, arguing that there were genuine issues of material fact as to whether the Kokkos' realtor, Ms. Walker, knew about the MOCAR offer before the Kokkos accepted the counteroffer, thus triggering the Kokkos' duty to offer $731,000 for the Property. The Moores also contended that there were genuine issues of material fact on whether the Kokkos met their obligations to submit a "lender's commitment letter" within five days of the binding agreement date and to tender funds at closing.

The trial court held that the undisputed facts showed that the Moores breached the contract by failing to close on the sale and by selling the Property to MOCAR. The court further held that the sale to MOCAR was "a product of fraud between the Drivers and the Moores." Based on these and other findings, the court set aside the deed from the Moores to MOCAR and ordered the Moores to sell the Property to the Kokkos for $721,000.

### *Final Judgment*

After a trial on damages, the court awarded judgments against the Moores and the Driver Defendants for the Kokkos' attorney's fees and costs, and the court awarded $43,000 plus pre-judgment interest to Crye-Leike for its commission on the sale. This appeal followed.

### ISSUES

The Moores and the Driver Defendants raise four issues on appeal:

(1) Whether the trial court abused its discretion when it entered a default judgment against the Driver Defendants as a discovery sanction and failed to grant a continuance of the default hearing.

(2) Whether genuine issues of material fact and questions of law precluded summary judgment in favor of the Kokkos for breach of contract, civil conspiracy, fraud, rescission, and specific performance, and whether the trial court granted remedies not legally available to the Kokkos.

(3) Whether the award of a real estate commission to Crye-Leike should be reversed when it was based on the trial court's wrongful finding that the Moores breached the contract for the sale of the Property to the Kokkos.

(4) Whether the awards of discretionary costs and court costs to the Kokkos against the Moores and the Driver Defendants should be reversed, if this court sets aside the judgments against them on appeal.

The Kokkos request an award of their appellate attorney's fees.

- 5 -

I. SANCTIONS AND REQUEST TO CONTINUE HEARING

The Driver Defendants challenge the trial court's denial of their request for a continuance and the court's imposition of discovery sanctions for multiple reasons. We will discuss each in turn.

A. Request to Continue

The Driver Defendants contend that the trial court erred by not continuing the sanctions hearing that was set for May 23, 2022. This contention is based on two arguments. One, they contend that they did not have five days' notice as required by Tennessee Rule of Civil Procedure 6.04. Two, they contend that denying a continuance constituted an abuse of discretion because their counsel already had multiple cases scheduled in Cannon County, Tennessee.

This court reviews a trial court's decision to deny a motion for a continuance under the abuse of discretion standard of review. *In re A'Mari B.*, 358 S.W.3d 204, 213 (Tenn. Ct. App. 2011) (citing *State Dep't of Children's Servs. v. V.N.*, 279 S.W.3d 306, 317 (Tenn. Ct. App. 2008)). "[W]e will not disturb a trial court's ruling on such a motion unless the record clearly shows abuse of discretion and prejudice to the party seeking a continuance." *In re Ashley M.*, No. E2009-00517-COA-R3-PT, 2009 WL 3103817, at *4 (Tenn. Ct. App. Sept. 29, 2009) (citing *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 415 (Tenn. 1997)).

1. Notice

Tennessee Rule of Civil Procedure 6.04 states in pertinent part: "A written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served not later than five days before the time specified for the hearing . . . ." Tenn. R. Civ. P. 6.04(1).

As pertinent to the issue of whether the Driver Defendants were provided sufficient notice of the sanctions hearing, Rule 6.01 provides:

> In computing any period of time prescribed or allowed by these rules, by order of court, or by an applicable statute, **the date of the** act, **event** or default **after which the designated period of time begins to run is not to be included**. The last day of the period so computed shall be included unless it is a Saturday, a Sunday, or a legal holiday as defined in Tenn. Code Ann. § 15-1-101 . . . . When the period of time prescribed or allowed is less than eleven days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation.

Tenn. R. Civ. P. 6.01 (emphasis added).

Turning to the facts in this case, the "event" referenced in Rule 6.01 was the hearing on the motion for sanctions, which was scheduled to be heard on Monday, May 23, 2022. And as this court explained in *Cartwright v. Tennessee Farmers Mutual Insurance Company*, 453 S.W.3d 910 (Tenn. Ct. App. 2014), we calculate the relevant period by counting backwards from the event because the notice required under Rule 6.04 is "not later than five days **before** the time specified for the hearing."[3] *Id*. at 914 (emphasis added). By counting backwards, the date of the hearing, Monday, May 23, 2022, the date the designated period of time begins to run, is not included in our calculation. *See* Tenn. R. Civ. P. 6.01. And because the required notice is less than eleven days, intermediate Saturdays and Sundays are to be excluded from the computation. *See* Tenn. R. Civ. P. 6.01 (When the prescribed period is less than 11 days, intermediate Saturdays, Sundays, and holidays are excluded. Tenn. R. Civ. P. 6.01). Thus, we do not include Saturday, May 21, 2022, or Sunday, May 22, 2022, in our calculation.

By counting backward from the date the designated period of time begins to run, which is not included in our calculation, Monday, May 23, 2022—and also excluding Sunday, May 22, and Saturday, May 21—Friday, May 20, is day one; Thursday, May 19, is day two; Wednesday, May 18, is day three; Tuesday, May 17, is day four; and Monday, May 16, the last day of the relevant period,[4] is day five. Because Monday, May 16, the day the motion was **hand delivered** to counsel for the Driver Defendants, is day five, the Driver Defendants were served notice of the sanctions hearing exactly five days before the hearing, which is *not later* than five days before the event. *See Cartwright*, 453 S.W.3d at 915. As such, the Driver Defendants were provided proper notice of the sanctions hearing.

For completeness, we acknowledge the Driver Defendants' alternative argument that they were entitled to 120 hours' notice as distinguished from five days' notice. They argue:

---

[3] While discussing a strikingly similar computation of time issue, this court in *Cartwright* calculated the allowed period of time by counting backwards from the date of the hearing. 453 S.W.3d at 914. The *Cartwright* court noted, however, "that the result is the same if we calculate the time by counting forward beginning the calculation on the date the response was filed and applying the rules of calculation set out in Tenn. R. Civ. P. 6.01." *Id.* at 914–15.

[4] Monday, May 16, 2022, is included in the calculation because, by counting backwards, it was the "last day" of the relevant period. *See* Rule 6.01 (The last day of the period so computed shall be included unless it is a Saturday, a Sunday, or a legal holiday as defined in Tenn. Code Ann. § 15-1-101, or, when the act to be done is the filing of a paper in court, a day on which the office of the court clerk is closed . . . .").

Here, the motion for sanctions was served on May 16, 2022 at approximately 4:05 p.m. and set to be heard on May 23, 2022 at 9:00 a.m. Because Rule 6.02 provides weekends do not count, and because the Rule refers to the <u>time</u> specified for the hearing, not the <u>date</u>, the earliest the motion could have been properly <u>heard</u> was 4:05 p.m. on May 23, 2022, not 9:00 a.m. The Trial Court's interpretation of Rules 6.02 and 6.04 "stray[ed] beyond the applicable legal standard" when it failed to find that a full five days' notice had not been provided.

(Emphasis in original). We respectfully disagree, finding that the rule contemplates days, not hours. Thus, we find this argument unpersuasive.

## 2. Scheduling Conflict

The Driver Defendants also contend that the trial court abused its discretion by not continuing the hearing knowing that their counsel had prior commitments in other courts. For their part, the Kokkos insist the decision was within the discretion of the trial court, and they rely on the trial court's finding that counsel for the Driver Defendants never filed a proper motion to continue, did not try to schedule a phone call with the trial court to request a continuance, and made no effort to participate in the hearing electronically, which the Driver Defendants had done before.

We acknowledge the Driver Defendants' assertion that their counsel "notified" the trial court that he could not attend the hearing. But the fact that the Driver Defendants' counsel simply called the clerk and/or told the judge's office about the scheduling conflict and made a brief notation of that conflict in their Response to the Motion for Sanctions fails to establish that the trial court abused its discretion by not continuing the hearing. We also note that the order disposing of the Motion for Sanctions thoroughly discussed the defenses raised by the Driver Defendants in their Response as well as their attorney's scheduling conflict. Thus, the Driver Defendants were not prejudiced by the fact their attorney could not attend the sanctions hearing.

Because the record does not clearly show an abuse of discretion and we find no resulting prejudice to the Driver Defendants from the decision to proceed with the hearing, *see In re Ashley M.*, 2009 WL 3103817, at *4, we affirm the trial court's decision to conduct the May 23, 2022 sanctions hearing as scheduled.

## B. Motion for Sanctions

We now turn our attention to the contention that the trial court erred by striking the Driver Defendants' answers and entering a default judgment against them as a discovery sanction under Tennessee Rule of Civil Procedure 37.02. The Driver Defendants contend that the sanction was unnecessarily harsh because they provided their discovery responses before the sanctions hearing and that the court should have considered lesser sanctions.

They also contend the trial court erred by imputing to them discovery misconduct that was committed by the Moores.

As an initial matter, we note that, when a party fails to comply with discovery rules, "a motion to compel discovery . . . is the usual remedy and the predicate for [sanctions]." 1 Lawrence A. Pivnick, *Tennessee Circuit Court Practice* § 18:13 (2023–2024 ed.). Here, the Kokkos established the predicate for sanctions by obtaining a court order compelling the Driver Defendants to submit to discovery. We also find it significant that this was the second order that compelled the Driver Defendants to respond to discovery by a certain date, which they failed to do.[5]

Tennessee Rule of Civil Procedure 16.06 provides, in relevant part, "If a party or party's attorney fails to obey a scheduling or pretrial order, . . . the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37.02." When a party fails to obey an order to provide discovery, Rule 37.02 authorizes the court to make such orders regarding the failure as are just, including an order "rendering a judgment by default against the disobedient party":

> If a . . . party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> (A)    An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
>
> (B)    An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;
>
> (C)    An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;
>
> (D)    In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders . . . .

---

[5] The first order that set a discovery deadline was the Scheduling Order.

Tenn. R. Civ. P. 37.02.

"The sanctions addressed in Tenn. R. Civ. P. 37.02 'serve a three-fold purpose: (1) to secure a party's compliance with the discovery rules, (2) to deter other litigants from violating the discovery rules, and (3) to punish parties who violate the discovery rules.'" *Burnette v. Sundeen*, 152 S.W.3d 1, 3 (Tenn. Ct. App. 2004) (quoting *Mansfield v. Mansfield*, No. 01A01-9412-CH-0058, 1995 WL 643329, at *5 (Tenn. Ct. App. Nov. 3, 1995)). But as we have explained,

> The powers of the court are not unlimited, and the inherent powers of the court including to take action to prevent discovery abuse must be exercised with both restraint and discretion. The punishment must fit the offense, and the power to sanction should be used sparingly. It should not be used like a sword and used frequently because to do so would diminish the significance when sanctions are imposed.

*Adams v. Illinois Cent. R.R. Co.*, No. W2020-01290-COA-R3-CV, 2022 WL 170134, at *8 (Tenn. Ct. App. Jan. 19, 2022) (citation modified) (quoting *Alexander v. Jackson Radiology Assocs., P.A.*, 156 S.W.3d 11, 15 (Tenn. Ct. App. 2004)). Thus, when choosing an appropriate sanction, courts should consider four factors:

> 1) the party's reasons for not providing the challenged evidence during discovery; 2) the importance of the evidence; 3) the time needed for the other side to prepare to meet the evidence; and 4) the propriety of granting a continuance.

*Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 133 (Tenn. 2004).

Here, the Driver Defendants failed to respond to the Kokkos' discovery requests in the time provided by the Rules of Civil Procedure, and they failed to comply with the deadline imposed by the Scheduling Order.[6] Resultingly, the Kokkos filed a Rule 37.01 motion to compel discovery, which the trial court granted, ordering the defendants to submit their discovery responses by May 6, 2022. Nevertheless, the Driver Defendants once again failed to comply. Thus, the Driver Defendants failed to comply with the Rules of Civil Procedure as well as two court orders. Based on the repeated failures to submit to

---

[6] The Advisory Commission comment to Rule 16.01 of the Rules of Civil Procedure recognizes that the rule was "designed to . . . encourage[e] and enable[e] judges to manage the pretrial stages of litigation." Tenn. R. Civ. P. 16.01 advisory committee's note to 1995 amendment. It has also been recognized that judges who set deadlines have "the right to assume that the deadlines they set, as well as those imposed by the rules, will be honored." *Kenyon v. Handal*, 122 S.W.3d 743, 751 (Tenn. Ct. App. 2003) (citing *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996)).

discovery, including two court orders, the Kokkos filed their Rule 37.01(C) Motion to Strike Defendants' Answer and Enter Default Judgment or Other Appropriate Sanctions.

After taking the Motion for Sanctions and the Driver Defendants' Response under advisement, the trial court determined that striking the Driver Defendants' Answer and granting a default judgment against them was appropriate based on numerous and specific findings, including the following:

12. Pursuant to Rule 33.01, Tenn. R. Civ. P., the Defendants' responses to [Plaintiff'] discovery requests were due on March 31, 2022.

13. Pursuant to the . . . Scheduling Order, written discovery was to be completed on or before April 11, 2022.

. . .

15. The Defendants, Greg Driver, Daffney Driver and MOCAR Enterprises, Inc., failed to respond to the outstanding written discovery requests on or before April 11, 2022, thereby violating the Court's order that written discovery be completed by that date.

16. On April 16, 2022, the Plaintiffs filed a Motion to Compel Discovery Responses . . . .

17. The parties submitted an Agreed Order allowing the Defendants, Greg Driver, Daffney Driver and MOCAR Enterprises, Inc., until May 6, 2022, to submit their discovery responses to the Plaintiffs. This Agreed Order was approved and entered by the Court on April 25, 2022.

18. The Defendants, Greg Driver, Daffney Driver and MOCAR Enterprises, Inc., failed to submit their discovery responses to the Plaintiffs on or before May 6, 2022, thereby violating a second order of the Court.

19. The Plaintiffs filed their Motion to Strike Defendants' Answer and Enter Default Judgment or Other Appropriate Sanctions on May 16, 2022.

. . .

21. In their response, the Defendants contended much of the discovery requests were a "repeat" of information and answers provided in other discovery responses; however, the outstanding discovery requests were the only discovery requests submitted to the Defendants, Greg Driver, Daffney Driver and MOCAR Enterprises, Inc., in this case.

. . .

- 11 -

25. The Court finds that the delay in responding to outstanding written discovery prejudiced the Plaintiffs by hampering their ability to prepare for the upcoming depositions of Greg Driver and Daffney Driver.

26. The Defendants, Greg Driver, Daffney Driver and MOCAR Enterprises, Inc.. submitted discovery responses electronically late in the afternoon of Sunday, May 22, 2022. Notably, the verification affidavits on each of the three sets of interrogatory responses show that they were signed by the parties on May 20, 2022.

27. A cursory review of the discovery responses sent on May 22, 2022, reveals instances of partially answered interrogatories and objections to numerous interrogatories and requests for documents with no answer or response being given aside from the objection.

.    .    .

34. In this case, the Defendants, Greg Driver, Daffney Driver and MOCAR Enterprises, Inc., have engaged in what may be characterized as a joint defense with the Defendants, Thomas L. Moore, Jr. and Wendy Moore. Both sets of defendants are represented by the same attorney in this matter.

35. The Court has previously issued a monetary sanction against the Moore defendants for failing to appear at a noticed deposition.

36. On at least two occasions, motions to compel have been filed due to the Moore defendants' failure to timely respond to written discovery requests.

37. The Defendants have exhibited a pattern of non-compliance with the applicable rules of civil procedure pertaining to discovery in this case.

38. The Defendants, Greg Driver, Daffney Driver and MOCAR Enterprises, Inc., have exhibited a pattern of failing and refusing to comply with their obligations under the Rules of Civil Procedure and this Court's orders.

39. A prior instance of the issuance of monetary sanctions for failure to follow the applicable rules of civil procedure pertaining to discovery failed to curb the defendants' pattern of failing to respond to written discovery in a timely fashion and in compliance with the orders of the Court.

40. This is an appropriate circumstance for the imposition of the sanctions authorized by Rule 37.02, Tenn. R. Civ. P., based on the violation of two separate and distinct orders of the Court and the record as a whole.

Based on the foregoing as well as other findings, the trial court entered a default judgment against the Driver Defendants.

On appeal, the Driver Defendants contend this sanction was outside the permissible scope of Tennessee Rule of Civil Procedure 37.02, which addresses the consequences of failing to obey an order to provide or permit discovery. We disagree.

We recognize that, while the sanction of judgment by default is expressly authorized by Rule 37.02(C), it is a "drastic sanction[]" that "run[s] counter to the judicial system's general objective of disposing of cases on the merits." *Henry v. Goins*, 104 S.W.3d 475, 481 (Tenn. 2003). Still, "trial judges have 'wide discretion' in determining the sanction to be imposed." *Just. v. Bd. of Pro. Resp.*, 693 S.W.3d 225, 244 (Tenn. 2024) (quoting *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 133 (Tenn. 2004)). Discretionary decisions are reviewed under the "abuse of discretion" standard of review, which does not permit reviewing courts to substitute their discretion for the trial court. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). However, the abuse of discretion standard of review does not immunize a lower court's decision from meaningful appellate scrutiny:

> Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

*Id.* (citations omitted). Discretionary decisions require "a conscientious judgment, consistent with the facts, that takes into account the applicable law." *White v. Beeks*, 469 S.W.3d 517, 527 (Tenn. 2015). Thus, we will review the trial court's decision to determine, where applicable, whether there is a factual basis for the decision in the record, whether the court properly identified and applied the correct legal principles, and whether the decision is within the range of acceptable alternative dispositions. *See Lee Med., Inc.*, 312 S.W.3d at 524.

Having reviewed the record, we find that the factual basis on which the decision was made to enter a default judgment against the Driver Defendants is supported by the record. Indeed, the record shows that the Driver Defendants repeatedly failed to comply with discovery deadlines and failed to comply with two court orders compelling their

- 13 -

compliance. These failures prejudiced the Kokkos because they delayed the taking of the Drivers' scheduled depositions as well as the scheduled trial date. Furthermore, the Driver Defendants failed to offer evidence justifying their failure to provide even partial responses to discovery, realizing that the only basis for their inability to respond to discovery was difficulty in downloading messages from their cell phones.

Moreover, the Driver Defendants consented to the discovery deadline set forth in the agreed order that resulted from the Kokkos' Rule 37 motion to compel discovery. And the Driver Defendants never sought an extension of time to respond to discovery until after the Kokkos filed their Rule 37.02(C) motion for a default judgment. Their last-minute response was not supported by an affidavit; they merely stated that "[t]he Defendants struggled with getting text messages off of the phones in a way that they could be produced." And, as noted above, they gave no justification for failing to provide discovery responses to the other interrogatories and requests for documents. They also asserted that "[m]uch of the discovery requests and information provided is just a repeat of other information and answers provided in other discovery responses." However, as the trial court correctly found, the discovery at issue was the only discovery propounded to the Driver Defendants; thus, it could not have been redundant.

The trial court also found the discovery responses provided by each of the Driver Defendants on the day before the sanctions hearing were incomplete and unresponsive in many respects. Specifically, the court found that "the discovery responses sent on May 22, 2022, reveals instances of partially answered interrogatories and objections to numerous interrogatories and requests for documents with no answer or response being given aside from the objection." Having reviewed the responses of each of the three Driver Defendants we agree with the trial court's findings. Therefore, the incomplete and unresponsive discovery responses would necessitate further delays in the trial schedule by requiring another motion to compel discovery unless the court granted a default judgment against the Driver Defendants.

These facts provide a basis for the entry of a default judgment as a sanction. *See Shahrdar v. Glob. Hous., Inc.*, 983 S.W.2d 230, 236 (Tenn. Ct. App. 1998) (holding a default judgment was an appropriate sanction for defendants who repeatedly failed to comply with discovery orders); *Tennison Bros., Inc. v. Thomas*, 556 S.W.3d 697, 713–14 (Tenn. Ct. App. 2017) (holding that striking defendant's answers and prohibiting defendant from presenting "any evidence" at a hearing were appropriate sanctions for defendant's failure to provide sufficient discovery responses).

We also find that the trial court properly identified and correctly applied the relevant legal principles regarding discovery sanctions, which is evident from the authorities identified and discussed in the court's order. *See* Order Granting Plaintiffs' Motion to Strike Defendants' Answers and Enter Default Judgment, ¶¶ 28, 29, 30, 31, 32, and 40. And as precedent instructs, a trial court's discretionary decision to impose a particular

sanction "will be set aside on appeal only when 'the trial court has misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of the evidence.'" *Mercer*, 134 S.W.3d at 133 (quoting *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999)).

We also find the decision to enter a default judgment against the Driver Defendants, which is expressly authorized under Rule 37.02(C), is within the range of acceptable alternative dispositions. A default judgment is an appropriate sanction for defendants who repeatedly fail to comply with discovery deadlines and orders of the court issued pursuant to a Rule 37.01 motion to compel discovery. *See Shahrdar*, 983 S.W.2d at 236; *see also Hwang v. Arita*, No. W2023-01703-COA-R3-CV, 2025 WL 1540652, at *6–7 (Tenn. Ct. App. May 30, 2025); *Kelly*, 2025 WL 1178680, at *3–4. Although reasonable judicial minds may differ about the soundness of entering a default judgment based on the record before us, we are instructed to allow the trial court's discretionary decision to stand when it is within the range of acceptable alternative dispositions based on the facts of the case and relevant legal principles. *See White*, 21 S.W.3d at 223 (citing *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999)). This is a case in which reasonable minds could differ concerning the sanction for the Driver Defendants' conduct, yet the trial court's discretionary decision is within the range of acceptable alternative dispositions based on the facts of this case and relevant legal principles. *See id*.

Discerning no abuse of discretion, we affirm the trial court's decision to strike the answers of the Driver Defendants and enter a default judgment against each of them on the Kokkos' claims for unlawful procurement of breach of contract and civil conspiracy.

## II. MOTION FOR PARTIAL SUMMARY JUDGMENT

The Moores contend that genuine issues of material fact and questions of law precluded summary judgment on the breach of contract claims. The Moores also argue that the trial court erred by setting aside the MOCAR deed because recission was not raised or supported in the Complaint and Motion for Partial Summary Judgment. The Moores further contend that the Kokkos did not state a legally cognizable claim for civil conspiracy, and they argue that the trial court erred by making a sua sponte finding of fraud.

"A lower court's decision to grant summary judgment is a question of law that is reviewed de novo with no presumption of correctness." *Falls v. Goins*, 673 S.W.3d 173, 178 (Tenn. 2023). Thus, we must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015).

Under Rule 56, "the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Generally, "[o]ur

review of the facts is limited to the record before the trial court when it heard the motion." *Winter v. Smith*, 914 S.W.2d 527, 535 (Tenn. Ct. App. 1995) (citations omitted). "For facts to be considered at the summary judgment stage, they must be included in the record, and they must be admissible in evidence." *Green v. Green*, 293 S.W.3d 493, 513 (Tenn. 2009) (citations omitted). "We view all of the evidence in the light most favorable to the nonmoving party, including resolving all inferences to be drawn from the facts in that party's favor." *In re Est. of Cone*, 652 S.W.3d 822, 826 (Tenn. Ct. App. 2022) (citation omitted).

Motions for summary judgment must "be accompanied by a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. The purpose of this rule "is to 'assist the Court in focusing on the crucial portions of the record' in determining whether there is a genuine issue requiring a trial on the merits." *Owens v. Bristol Motor Speedway, Inc.*, 77 S.W.3d 771, 774 (Tenn. Ct. App. 2001) (quoting Advisory Committee Comment to Tenn. R. Civ. P. 56.03). Statements of material facts "are, in short, roadmaps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own." *Owens v. Bristol Motor Speedway, Inc.*, 77 S.W.3d 771, 774 (Tenn. Ct. App. 2001) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994)).

That said, trial courts are not limited to the statements of material facts when determining whether a genuine issue of material fact exists. "Trial courts are obligated to consider pleadings, depositions, answers to interrogatories, admissions, and affidavits, to the extent that these are part of the record, in determining whether summary judgment should be granted." *Watts v. Mercedes-Benz USA, LLC*, 254 S.W.3d 422, 424 (Tenn. Ct. App. 2007) (citation omitted); *see also Higgenbotham v. Ochsner Found. Hosp.*, 607 F.2d 653, 656–57 (5th Cir. 1979) (observing that identical federal rule of civil procedure "does not distinguish between depositions merely filed and those singled out by counsel for special attention."). Likewise, appellate courts are not limited to the parties' statements of material facts when reviewing a summary judgment. *See TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. 2019) (rejecting argument that court should disregard facts in appellate brief that were not included in response to statement of material facts); *see also* Tenn. R. App. P. 13(c) (appellate courts may consider "those facts established by the evidence in the trial court and set forth in the record" when reviewing trial court judgment).

## A. Breach of Contract

The Moores contend that genuine issues of material fact and questions of law precluded summary judgment on the breach of contract claims.

"In a breach of contract action, claimants must prove the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages

caused by the breach." *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011). "Questions of contract interpretation are generally considered to be questions of law, and thus are especially well-suited for resolution by summary judgment." *Bourland, Heflin, Alvarez, Minor & Matthews, PLC v. Heaton*, 393 S.W.3d 671, 674 (Tenn. Ct. App. 2012). Accordingly, "[w]here the facts presented are undisputed, whether they constitute a performance or a breach of a written contract is a question of law for the court." 17A Am. Jur. 2d Contracts § 590; *see Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 94–96 (Tenn. 1999) (affirming summary judgment on breach of contract claim when facts were undisputed).

As an initial matter, the Moores argue that there were disputes of fact as to whether the parties mutually assented to the contract's terms and, therefore, whether there was a valid and enforceable contract. We find the Moores waived this issue by not raising it in the trial court. *See State v. Rowland*, 520 S.W.3d 542, 545 (Tenn. 2017) ("[I]ssues raised for the first time on appeal are waived."). To the contrary, in their Response to the Kokkos' Motion for Partial Summary Judgment, the Moores admitted "that a valid contract exists." Thus, we consider it undisputed that the Kokkos had a valid, enforceable contract to purchase the Property from the Moores.

It was also undisputed that the Moores did not fulfill their duty to close. Nevertheless, the Moores argue that they were not required to close because the Kokkos committed the first material breach of the contract. And it was undisputed that the Kokkos had a right to seek specific performance of the contract in the event of a breach, but the Moores argue that specific performance was impossible because they had already sold the Property to MOCAR.

### 1. First Material Breach[7]

"[A] party who commits the first uncured material breach of contract may not recover damages for the other party's material breach." *Madden Phillips Const., Inc. v. GGAT Dev. Corp.*, 315 S.W.3d 800, 812 (Tenn. Ct. App. 2009) (citing *United Brake Sys., Inc. v. Am. Env't Prot., Inc.*, 963 S.W.2d 749, 756 (Tenn. Ct. App. 1997)).

In their Response to the Kokkos' Motion for Partial Summary Judgment, the Moores argued that the Kokkos breached the contract in three ways: (1) by not providing a "lender's commitment letter" within five days of the binding agreement date; (2) by not offering $731,000 for the Property after learning that there was a fifth offer for $730,000; and (3)

---

[7] After oral argument in this case, the Moores and the Driver Defendants moved to strike consideration of a "corrected" counteroffer that was submitted at the trial on Crye-Leike's claim and referred to by Crye-Leike in support of its position that the Moores breached the contract. Crye-Leike and the Kokkos filed responses in opposition to the motion to strike. We pretermit the issue because we have affirmed the trial court on other grounds.

by not tendering funds at closing. The trial court did not expressly address these claims but determined that the Kokkos "did not breach the contract in any way."

To begin, the Moores assert that "[t]he trial court's failure to engage with [these issues] is fatal to its summary judgment ruling." We disagree.

Tennessee Rule of Civil Procedure 56.04 requires the trial court to "state the legal grounds upon which the court denies or grants the motion." Tenn. R. Civ. P. 56.04. However, the failure of a trial court to strictly follow this rule does not preclude appellate courts from resolving clear legal issues on appeal when the record is well-developed. *Grand Valley Lakes Prop. Owners Ass'n, Inc. v. Burrow*, 376 S.W.3d 66, 76 (Tenn. Ct. App. 2011); *see also Highlands Physicians, Inc. v. Wellmont Health Sys.*, 625 S.W.3d 262, 283 (Tenn. Ct. App. 2020). Judicial economy supports the practice of reviewing summary judgment orders "when the basis for the trial court's decision can be readily gleaned from the record" and remanding the case "only when [the appellate court's] practiced eyes cannot discern the grounds for the trial court's decision." *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 314 (Tenn. 2014). Moreover, when reviewing a summary judgment order, we must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *See Rye*, 477 S.W.3d at 250.

Thus, we will consider whether there were genuine issues of fact that were material to the Moores' affirmative defense and, if not, whether the undisputed facts established that the Kokkos were entitled to judgment on that defense as a matter of law.

a. Lender's Commitment Letter

The Moores asserted that the Kokkos breached § 2(B) of the contract, which provided:

> Buyer's obligation to close shall not be subject to any financial contingency. Buyer reserves the right to obtain a loan. **Buyer will furnish proof of available funds to close in the following manner: Lender's commitment letter . . . within five (5) days after Binding Agreement Date**. Should Buyer fail to do so, Seller may make written demand for compliance via the Notification form or equivalent written notice. **If Buyer does not furnish Seller with the requested notice within two (2) days after such demand for compliance, Buyer shall be considered in default and Seller's obligation to sell is terminated**.

(Emphasis added).

It was undisputed that the Kokkos preemptively provided an "Approval Letter" from F&M Bank with their offer on January 21, 2022. The Approval Letter said that Mr. Kokko was approved for a loan to purchase the Property in the amount of the "purchase price."

- 18 -

However, on February 1, 2021, Mr. Moore emailed Mr. Irby, claiming that the Kokkos had not provided "[t]he right bank letter which would be a loan commitment letter and not an approval letter." Mr. Irby asked Ms. Walker for a "commitment letter" later that day. Accordingly, on February 2, 2021, the Kokkos provided a "Commitment/Approval Letter" from F&M Bank stating that Mr. Kokko was approved for a loan for $721,000 to purchase the Property.

Thus, the undisputed facts show that the Kokkos cured any deficiency by providing the Commitment/Approval Letter within two days after receiving a demand for compliance as contemplated in § 2(B) of the contract. Accordingly, the Kokkos did not breach their obligation under this section of the contract.

### b. Duty to Increase Offer

The Moores also argued that the Kokkos breached their duty to "offer" $731,000 for the Property as required by § 18 of the contract, which provided: "In the event of multiple offers, Buyer agrees to offer $1000 over highest offer price up to $800,000. Seller to provide proof of competing offer(s)."

It was undisputed that the highest offer was MOCAR's offer for $730,000, and it was undisputed that the Kokkos did not offer $731,000. But the parties disputed whether the Moores provided "proof" of the MOCAR offer. The Moores cited Ms. Walker's deposition testimony as evidence that Mr. Irby told Ms. Walker that there was a "5th offer" for $730,000. The Kokkos agreed that Ms. Walker knew about the "5th offer" but contested whether the cited testimony supported the Moores' assertion that Ms. Walker knew the **amount** of the offer. Regardless, the Kokkos argued § 18 required documentary proof.

Having reviewed the pages cited by the Moores in their Statement of Material Facts, we find no dispute as to what Ms. Walker knew and when she knew it. Ms. Walker unequivocally testified that she knew the "5th offer" was $10,000 higher than the Ogletree offer and that she knew this before the Kokkos accepted the Moores' counteroffer. But we also find this fact is immaterial because the Kokkos never had a binding obligation to offer more money for the Property. *See Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993) ("A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed.").

It is settled that "[a]n offer must be unconditionally accepted, and if the acceptance is conditional or the terms are varied from the offer this constitutes a new offer and cannot be relied upon as an acceptance of the original offer." *Petway v. Loew's Nashville & Knoxville Corp.*, 117 S.W.2d 975, 982 (Tenn. Ct. App. 1938) (citations omitted). "[A] proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation unless the party who made the original offer renews it, or assents to the modification suggested." *Tullahoma Concrete Pipe Co. v. T. E. Gillespie Const. Co.*, 405 S.W.2d 657, 665 (Tenn. Ct. App. 1966) (quoting *Canton Cotton*

*Mills v. Bowman Overall Co.*, 257 S.W. 398, 402 (Tenn. 1924)); *see Armistead v. Tennessee Consol. Coal Co.*, 14 Tenn. App. 434, 446 (1932) ("A party making an offer is not bound where the other party makes a counter offer even though that party states: 'We have therefore entered the contract accordingly and await your further commands.'").

The parties' negotiations began with the Kokkos' $700,000 offer on January 21, 2021. The offer included several stipulations, including that, "[i]n the event of multiple offers, Buyer agrees to offer $1000 over highest offer price up to $800,000. Seller to provide proof of competing offer(s)." The Kokkos' offer could "be withdrawn at any time before acceptance with Notice" and would terminate "if not countered or accepted" by 6:00 p.m. the next day, January 22, 2021.[8]

At 5:20 p.m. on the 22nd, the Moores sent a counteroffer, accompanied by a copy of the Ogletree offer. The counteroffer agreed to the terms of the Kokkos' offer "[w]ith the following exceptions." Those exceptions included a purchase price of $721,000 "per Buyer's Escalation Provision" and a stipulation that the Kokkos—not the Moores—would pay for title insurance. The counteroffer said that the Property would remain on the market and could "be sold to any other party" until notice of acceptance was delivered by the Kokkos. Moreover, the Moores could withdraw the counteroffer "at any time before acceptance with notice."

In short, there was no enforceable contract until the Kokkos accepted the counteroffer later that evening, and the contract expressly stated that the purchase price would be $721,000. Thus, the Kokkos did not breach the contract by not offering to purchase the Property for $731,000.

### c. Tender of Funds at Closing

The Moores also argued that the Kokkos breached § 2 of the contract, which required the Kokkos to tender funds at closing via wire transfer or cashier's check.

In their Statement of Undisputed Facts, the Kokkos cited Ms. Walker's deposition testimony for the proposition that they tendered $721,000 at closing. The Moores disputed this fact, citing Mr. Kokko's own deposition testimony. But after reviewing the depositions, we find no genuine issue on whether the Kokkos tendered funds at closing.

Ms. Walker testified that it was her "understanding" that the Kokkos tendered funds at closing—but she also said that she "left halfway through." Thus, Ms. Walker's testimony would be inadmissible at trial because it was not based on personal knowledge. *See Watson v. Waters*, 375 S.W.3d 282, 291 (Tenn. Ct. App. 2012) ("For facts to be considered at the

---

[8] The offer initially terminated at 10:00 a.m. on January 22, but the Kokkos extended the deadline to 6:00 p.m.

summary judgment stage, . . . they must be admissible in evidence." (citations omitted)); Tenn. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). On the other hand, Mr. Kokko unmistakably testified that he provided proof of funds but did not actually pay the purchase price. Thus, the undisputed facts show that the Kokkos did not tender funds at closing. But we find this fact immaterial because the Moores had already repudiated the contract.

Repudiation occurs when "the words and conduct of the contracting party . . . amount to a total and unqualified refusal to perform the contract." *UT Med. Grp., Inc. v. Vogt*, 235 S.W.3d 110, 120 (Tenn. 2007) (quoting *Wright v. Wright*, 832 S.W.2d 542, 545 (Tenn. Ct. App. 1991)). "When a repudiation occurs before the time that a contract requires a party to perform, the repudiating party has committed an 'anticipatory repudiation' or an 'anticipatory breach' of the contract." *Id*. In this circumstance, the non-breaching party may "(1) rescind the contract and pursue remedies based on a rescission; (2) treat the repudiation as an immediate breach by bringing suit or changing position in some way; or (3) await the time for performance of the contract and bring suit after that time has arrived." *Id.* Additionally, once the contract is repudiated, the non-breaching party is excused from further performance. *See Lopez v. Taylor*, 195 S.W.3d 627, 635 (Tenn. Ct. App. 2005); Restatement (Second) of Contracts § 253 (1981) ("[O]ne party's repudiation of a duty to render performance discharges the other party's remaining duties to render performance.").

"[T]he principal policy for the anticipatory repudiation doctrine is that following the renunciation, the other party should not be required to proceed with the formal, economically wasteful, and useless act of further performance." Steven W. Feldman, 22 Tenn. Prac. Contract Law and Practice § 11:16; *see* 13 Williston on Contracts § 39:39 (4th ed.) ("If the promisor is not going to keep its promise in any event, it is useless to perform the condition, and the promisor becomes liable without the promisee's performance or tender."). "The law does not require a futile gesture." *Coulson v. Schroer*, No. 01-A-01-9312-CH00539, 1994 WL 228790, at *3 (Tenn. Ct. App. May 27, 1994). Accordingly, "[a]nticipatory breach is a recognized defense to a breach of contract action." *Hicks v. Chears*, No. M2019-01428-COA-R3-CV, 2021 WL 3200830, at *5 (Tenn. Ct. App. July 29, 2021) (citing *Mid-S. Indus., Inc. v. Martin Mach. & Tool, Inc.*, 342 S.W.3d 19, 25–26 (Tenn. Ct. App. 2010)).

Here, Mr. Moore made a total and unqualified refusal to perform before the Kokkos attended the closing. In response to the Kokkos' Statement of Material Facts, the Moores admitted that Mr. Moore's attorney sent a letter stating that the Property was no longer for sale one week before closing. The Moores also admitted that Mr. Moore refused to allow the Kokkos to conduct a final inspection and that Mr. Moore told the Kokkos that the Property was not for sale. Thus, the undisputed facts show that Mr. Moore repudiated the

contract. Accordingly, the Kokkos did not breach the contract by failing to tender funds at closing.

Because the undisputed facts show that the Kokkos did not breach the contract, the Moores were not relieved of their duty to sell the Property—which they did not do. For this reason, we affirm the summary judgment on the issue of liability.

## 2. Damages—Specific Performance

Even if summary judgment was appropriate on the contract claims, the Driver Defendants contend that the trial court erred by setting aside the MOCAR deed to facilitate specific performance of the contract. The Driver Defendants reason that the trial court could not rescind the MOCAR deed because the Kokkos did not plead a separate claim for rescission; did not plead grounds for rescission; did not raise rescission in their Motion for Partial Summary Judgment; and did not present evidence justifying rescission in support of their Motion for Partial Summary Judgment.

### a. Scope of Pleadings

To begin, we note that the Kokkos did not have to assert a separate claim for rescission, as it is a remedy rather than a cause of action. *See* 17A Am. Jur. 2d Contracts § 535. Still, the Driver Defendants contend that the Complaint did not allege grounds for rescission, which they say is available only "in instances of mutual mistake that is material to the transaction, or where the transaction was the product of fraud or duress." That may be true in a suit where the plaintiff is trying to rescind a contract to which they are a party. *See Fry v. Emmanuel Churches of Christ, Inc.*, 839 S.W.2d 406, 409 (Tenn. Ct. App. 1992) (stating that rescission is "available where the contract was induced by fraud or duress or where one party unequivocally renounces the contract or is legally unable to perform"). However, third parties may sue to rescind a deed under certain other circumstances.

Relevant here, a third-party may seek rescission of a deed when the conveyance injured the party's legal or equitable interests and the grantee had notice of those interests. *See In re Conservatorship of Groves*, 109 S.W.3d 317, 348 (Tenn. Ct. App. 2000) ("A third-party who is a stranger to the transaction cannot file suit to rescind a deed unless it can demonstrate an adverse effect on its legal or equitable rights."); *Hudson v. Collier*, 348 S.W.2d 350, 358 (Tenn. Ct. App. 1961) (holding third-party, adjacent landowners had the right to cancellation of deeds that conveyed land dedicated to use as public park). "A contract or agreement to convey is held to be such an interest as will prevail as against a subsequent purchaser with notice." *Williams v. Title Guar. & Tr. Co.*, 212 S.W.2d 897, 901 (Tenn. Ct. App. 1948); *see Aslinger v. Price*, No. E2006-00029-COA-R3-CV, 2006 WL 2521566, at *7 (Tenn. Ct. App. Sept. 1, 2006) (holding that contract to purchase property gave plaintiff an equitable interest).

The Kokkos' breach of contract claim specifically requested that the trial court set aside the MOCAR deed to facilitate specific performance of the contract. And in their prayer for relief, the Kokkos asked the court to "invalidate the conveyance of the subject real property from the Moore Defendants to MOCAR Enterprises, Inc." Moreover, the Kokkos alleged a prior equitable interest in the Property because they alleged a valid contract for its purchase. And the Kokkos alleged that the Driver Defendants had notice of the Kokkos' interest by claiming that the sale to MOCAR resulted from a conspiracy between the Driver Defendants and the Moores to get around the Kokkos' contract. Thus, we conclude that the Kokkos pleaded sufficient grounds for rescinding the MOCAR deed.

### b. Scope of Motion

Still, the Driver Defendants argue that the trial court's order setting aside the MOCAR deed should be vacated because it was outside the scope of the Kokkos' Motion for Partial Summary Judgment and the evidence before the court.

### (1) Issues Raised

"[T]he nonmoving party in a summary judgment proceeding should be sufficiently apprised of the moving party's asserted basis for summary judgment." *Bobo v. City of Jackson*, 511 S.W.3d 14, 22–23 (Tenn. Ct. App. 2015). "[I]f the court determines to enter summary judgment on a ground not presented or argued by the parties, the failure to give the losing party an opportunity to defend against that ground provides a ground for reversal." Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2720.1 (4th ed.); *see, e.g.*, *Presley v. Hanks*, 782 S.W.2d 482 (Tenn. Ct. App. 1989) (vacating part of summary judgment on issue not raised by motion). But a trial court may grant summary judgment on an issue not raised by the moving party "so long as the opposing party 'had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried.'" *Est. of Smith v. Highland Cove Apartments, LLC*, 670 S.W.3d 305, 315 (Tenn. Ct. App. 2023) (quoting *Franklin Real Est. Grp., Inc. v. Spero Dei Church*, No. M2019-01691-COA-R3-CV, 2021 WL 274747, at *4 (Tenn. Ct. App. Jan. 27, 2021)).

In resolving this issue, we find this court's decision in *Bobo v. City of Jackson*, 511 S.W.3d 14 (Tenn. Ct. App. 2015), persuasive. There, the plaintiff sued for inverse condemnation after the City of Jackson demolished her home. *Id*. at 16. The City moved for summary judgment, arguing that the statute of limitations barred the action because the plaintiff was a party to related proceedings that occurred more than one year before the plaintiff filed her complaint. *Id*. at 17. The trial court agreed and dismissed the action. *Id*. at 18.

On appeal, we recognized that the plaintiff was "arguably not alerted" to the issue of her status as a party to the earlier proceedings because that issue was outside the scope of the City's statement of material facts. *Id*. at 22. Still, we found that the trial court did not err in considering the issue, as the plaintiff had briefed it and cited relevant evidence in the

record. *Id*. at 23. Thus, "[b]ased on her actions in defending against the summary judgment motion, she was clearly on notice that the City deemed her party status in the [prior] proceedings to be an issue of central importance." *Id*.

Here, the Kokkos sought summary judgment on four issues: (1) whether a valid contract existed between the Kokkos and the Moores; (2) whether the Kokkos breached the contract; (3) whether the Moores breached the contract; and (4) whether the Kokkos had the right to specific performance. The Kokkos made no argument on why recission of the MOCAR deed was warranted, and their Statement of Material Facts had no facts related to the Drivers or MOCAR aside from mentioning MOCAR's competing offer. Moreover, the Kokkos produced no evidence of what MOCAR knew when it purchased the Property.

However, it cannot be said that the Driver Defendants were unaware that the conveyance to MOCAR was at issue. In their joint Response to the Motion for Partial Summary Judgment, the Moores and the Driver Defendants argued that the remedy of specific performance was unavailable because the Moores had sold the Property. And at the summary judgment hearing, the issue of whether the court had the authority to set aside the MOCAR deed was argued, with both parties presenting authority supporting their respective positions. The trial court then entered a memorandum, finding that the conveyance should be set aside because the Moores had no right to convey the Property. The court then ordered the Kokkos' attorney to draft an order.

However, before the order was entered, the Driver Defendants and the Moores filed a joint motion to alter or amend, citing authority for their position that specific performance was not available because the Moores no longer had title to the Property. In response, the Kokkos further briefed the court on caselaw that supported their request to set aside the conveyance. The Kokkos argued that they had a prior equitable interest in the Property and that MOCAR took title to the Property subject to that interest.

After a hearing in January 2023, the trial court denied the Motion to Alter or Amend, repeating its belief that it had authority to set aside the MOCAR deed to effectuate specific performance of the contract. The court then filed its Order Granting Motion for Partial Summary Judgment, once again confirming its decision to set aside the MOCAR deed. Undeterred, the Driver Defendants moved to revise the order, once again arguing, *inter alia*, that there were no grounds for setting aside the MOCAR deed. Still, the trial court adhered to its original decision and denied the motion.

Based on the foregoing, we find no error in the trial court's consideration of whether the MOCAR deed should be set aside.

### (2) Evidence Produced

We also find that the record contains sufficient, undisputable evidence that supports the trial court's decision to set aside the MOCAR deed.

Recission of a deed is warranted when the plaintiff had a contract to purchase real estate later conveyed to a third-party who accepted the real estate with knowledge of the plaintiff's interest. *See McCullough v. Silverfield*, 215 S.W.3d 356, 366 (Tenn. Ct. App. 2006) (affirming award of specific performance after the property was sold to a third-party when there was a valid contract, the third-party knew of the contract, and the buyer sought specific performance); *Aslinger*, 2006 WL 2521566, at *7 (affirming order to sell real estate to plaintiff when purchaser had notice of the plaintiffs' equitable interest when he bought the property); *Est. of Darnell v. Fenn*, 303 S.W.3d 269, 275 (Tenn. Ct. App. 2009) (affirming trial court's decision to divest purchaser of title to property when the purchaser had notice that the plaintiffs claimed an interest in the property). Generally, "[o]ur review of the facts is limited to the record before the trial court when it heard the motion [for summary judgment]." *Winter v. Smith*, 914 S.W.2d 527, 535 (Tenn. Ct. App. 1995) (citations omitted). However, when a party moves for reconsideration with additional evidence, we may consider the record as it stood at the time of reconsideration. *Id*. at 535–36.

In support of their Motion to Revise, the Driver Defendants filed 16 exhibits, including the deposition of Mr. Driver. Although Mr. Driver—MOCAR's CEO—denied that he induced the Moores to breach the contract, he admitted to knowing about the dispute between the Moores and the Kokkos over the contract's validity. Moreover, Mr. Driver admitted that his title company told him about the Kokkos' *lien lis pendens* before MOCAR purchased the Property. Considering this evidence, we see no benefit to vacating the trial court's order setting aside the MOCAR deed. *Cf. Butler v. Diversified Energy, Inc.*, No. 03A01-9804-CV-00146, 1999 WL 76102, at *3 (Tenn. Ct. App. Jan. 28, 1999) (affirming summary judgment despite lack of compliance with Rule 56.03 and noting that remand would result in another motion for summary judgment).

In sum, Mr. Driver's testimony shows that MOCAR had notice of the Kokkos' equitable interest; consequently, the trial court had authority to set aside the deed to facilitate specific performance of the contract. *See Williams v. Title Guar. & Tr. Co.*, 212 S.W.2d 897, 901 (Tenn. Ct. App. 1948); *Aslinger*, 2006 WL 2521566, at *7.[9]

## B. Civil Conspiracy

Next, the Moores contend that summary judgment on the Kokkos' civil conspiracy claim was improper for three reasons: (1) the Moores cannot be held liable for inducing their own breach of contract; (2) the Drivers cannot be held liable for conspiring with each

---

[9] The trial court's order does not specify the exact grounds on which it set aside the conveyance other than saying that the Moores had no right to convey the Property. Regardless, we may affirm the entry of summary judgment on grounds other than those relied on by the trial court. *See Bobo*, 511 S.W.3d at 21–22.

other or MOCAR; and (3) there were genuine issues of material fact regarding the alleged conspiracy between the Moores and the Drivers.

We agree that the Kokkos did not state a legally cognizable claim for civil conspiracy. "A claim for civil conspiracy 'requires an underlying predicate tort allegedly committed pursuant to the conspiracy.'" *Pagliara v. Moses*, 605 S.W.3d 619, 627 (Tenn. Ct. App. 2020) (quoting *Lane v. Becker*, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010)). Here, the Kokkos' claim was based on the underlying tort of inducement of breach of contract. But the Moores cannot be held liable for conspiring to induce their own breach. *See Ladd v. Roane Hosiery, Inc.*, 556 S.W.2d 758, 760 (Tenn. 1977) ("[A] party to a contract cannot be held liable for procuring its own breach or termination of that contract.").

Additionally, the Drivers cannot be held liable for conspiracy without the Moores because both Mr. Driver and Ms. Driver were agents of MOCAR. "Because the law requires two or more persons or entities to have a conspiracy, a civil conspiracy is not legally possible where a corporation and its alleged co-conspirators are not separate entities, but instead stand in a principal-agent relationship." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002) (citing *See* 16 Am. Jur. 2d Conspiracy § 56).

For these reasons, we vacate the trial court's entry of summary judgment on the Moores' claim for civil conspiracy. Further, because the claim fails as a matter of law, the Moores and the Drivers are entitled to have it dismissed on remand.

C. Fraud

In its Amended Memorandum on Motion for Partial Summary Judgment, the trial court held that MOCAR's contract with the Moores was "a product of fraud." The Moores and the Driver Defendants contend this holding is void because the Kokkos did not assert a fraud claim.

We agree that the Complaint did not allege a claim of "fraud." Thus, if the court meant to find that the Moores and the Drivers engaged in the tort of intentional misrepresentation, that holding is void. *Turner v. Turner*, 473 S.W.3d 257, 270–71 (Tenn. 2015) (observing that a judgment is void "if it appears on the face of the record itself . . . that the [judgment] is wholly outside of the pleadings, and no consent thereto appears." (quoting *Gentry v. Gentry*, 924 S.W.2d 678, 680 (Tenn. 1996))).

But as the Moores and the Driver Defendants observe on appeal, the trial court's finding of "fraud" seems to address "the Kokkos' claim against both the Drivers and the Moores for civil conspiracy." In fact, the word "conspiracy" does not appear in the trial court's Amended Memorandum. Yet, the court's final Memorandum Opinion said that the court "already concluded, in its granting of summary judgment and specific performance,

that an active tortious conspiracy existed between the Moores, and the Drivers and therefore by MOCAR, to break the contract entered into between the Kokkos and the Moores." Thus, we construe the court's finding of "fraud" as a finding that the Moores and the Drivers engaged in a civil conspiracy. Any error in this finding is harmless because we have held that the Kokkos cannot maintain a claim for civil conspiracy to induce breach of contract.

## III. AWARD TO CRYE-LEIKE

The Moores contend that, if this court reverses the summary judgment on the Kokkos' breach of contract claim, we should also reverse the award to Crye-Leike. Because we have found summary judgment on the contract claim was appropriate, we affirm the award to Crye-Leike.

## IV. DISCRETIONARY AND COURT COSTS

The Moores and the Driver Defendants also contend that, if this court reverses the trial court's rulings against them, we should also reverse the awards of discretionary costs and court costs. Because we have affirmed the default judgment and partial summary judgment, we affirm the award of discretionary and court costs.

## V. ATTORNEY'S FEES

The Kokkos have requested an award for their attorney's fees incurred on appeal. The contract provided for an award of costs, including reasonable attorney's fees, to the prevailing party in any action to enforce the agreement. Thus, the Kokkos are entitled to the requested award against the Moores. *See Eberbach v. Eberbach*, 535 S.W.3d 467, 478 (Tenn. 2017). On remand, the court must determine the proper amount of reasonable fees incurred by the Kokkos to defend against the Moores' appeal and enter judgment accordingly.

## IN CONCLUSION

Based on the foregoing, we vacate the summary judgment for civil conspiracy against the Moores and the Driver Defendants and affirm the court's judgment in all other respects. Accordingly, this cause is remanded for entry of an order dismissing the civil conspiracy claims and a determination of the proper amount of appellate attorney's fees. The costs on appeal are assessed against the appellants, Thomas L. Moore, Jr., Wendy Moore, MOCAR Enterprises, Inc., Greg Driver, and Daffney Driver, jointly and severally.

_____
FRANK G. CLEMENT JR., P.J., M.S.